IN RE ESTATE OF M. W. JARBOE and IN RE PARTNERSHIP ESTATE OF M. W. JARBOE & SON, RALPH F. LOZIER, Administrator De Bonis Non of Both Estates, v. O. M. JARBOE, Appellant.

**In Banc, March 30, 1910.**

1. **ADMINISTRATION: Settlement of Counterclaims.** The probate court has jurisdiction to hear claims against the estate, and incidentally to hear and determine counterclaims in favor of the estate, where filed, as offsets against claims theretofore filed.

2. ———: ———: **Appearance.** Both the claimants and the administrator can in writing waive formal notice of the presentation of claims and in writing enter their appearance, and when that is done, and the claims and counterclaims thereto are filed the probate court has jurisdiction to hear and determine both the claims against the estate and counterclaims in its favor.

3. ———: **Reference: Agreed Judgment: Revocation.** Where the probate court has jurisdiction of the subject-matter and of the parties, it can, by written agreement of claimants and the administrator, refer the claims and counterclaims to a referee to hear, try and determine, and where by such agreement "it is agreed that said probate court may and shall approve and in all respects confirm the report of the referee and all parts thereof" the court can enter judgment in accordance with such report as an agreed judgment. And such reference being by written consent, cannot be revoked upon a motion filed by one of the parties with the court to vacate; and judgment entered by the court in accordance with the referee's report is binding. *Held*, by VALLIANT, C. J., dissenting, that a probate court cannot appoint a referee, and refer claims and counterclaims to him to be heard, tried and determined, with or without the written consent and agreement of parties. The probate court has no jurisdiction or power except such as is specifically given it by law, and power to appoint a referee has not been conferred. Parties cannot authorize a court to render a judgment or make an order which it has no jurisdiction to render or make.

4. ——: ——: **Naming Referee: Court as Agent.** Where the agreement provided that "the probate court aforesaid is hereby authorized and directed, by order made and entered of record, to appoint some attorney at law as referee, to whom shall be referred by such order of court all of the claims, demands and counterclaims aforesaid, for determination and adjudication," the parties thereby denominated the probate judge as their agent to select the referee or arbitrator.

5. ——: ——: **Agreed Judgment: Waiver of Trial.** The administrator and claimants may by written stipulation agree upon a judgment both as to claims and counterclaims, and if they do so, they waive their right to a trial, either by the court or by a jury.

6. ——: ——: ——: **Appeal: Trial De Novo.** All parties having in writing agreed upon a reference by an order of the probate court and that the referee's report should be approved and confirmed by the court, that amounted to an agreement for an agreed judgment; and judgment having been rendered in accordance with the report, and the agreement further providing that either party should be entitled to an appeal to the circuit court, but in case an appeal should be taken the case should be submitted upon the evidence taken before the referee, and there should be no trial *de novo*, that agreement was also binding.

 *Held*, by VALLIANT, C. J., dissenting, that even if the probate court had power to appoint a referee—and it did not—that provision in the agreement that the referee's report should be adopted by the probate court as its judgment is void, as is also the provision that on an appeal the circuit court was not to try the case *de novo*.

7. ——: ——: **Compulsory.** Whether or not a probate court can of its own motion, without the consent of parties, order a reference for the adjustment of numerous claims and counterclaims, is discussed in the opinions, but not decided because not necessary to a decision—this case being one in which there was written consent.

Appeal from Carroll Circuit Court.—*Hon. Jno. P. Butler*, Judge.

AFFIRMED.

*Peak & Strother* for appellant.

(1) The probate court has no power or authority to appoint a referee to hear and determine controversies pending before that court; and the stipulation signed by the parties and filed in these proceedings could not and did not confer upon said court such power and authority. Hence, the judgment rendered by the probate court upon the report of the referee was void and of no effect, and the circuit court committed error in overruling appellant's motion to dismiss said proceedings on account of want of jurisdiction in the probate and circuit courts. R. S. 1899, secs. 200, 202, 203; Kansas City v. Graham, 147 Mo. 250; Ladd v. Forsee, 163 Mo. 506; Caulk v. Blythe, 55 Mo. 293; Bradley v. Woener, 46 Mo. App. 371; Morris v. Lane, 44 Mo. App. 1; Mangles v. Mangles, 6 Mo. App. 481; Smith v. Gilmore, 13 Mo. App. 155; 1 Woerner on Am. Law of Adm. (2 Ed.), *323, sec. 142. (2) Even if O. M. Jarboe had presented in the probate court a bona fide claim, duly verified according to law, against either the individual estate of M. W. Jarboe or the partnership estate of M. W. Jarboe & Son, or both of said estates, he would have had the unquestioned right to dismiss all of such claims; and when he filed a written dismissal of such claims in the probate court, such dismissal carried with it the pretended counterclaims and set-offs filed in such court by the administrator of the individual estate of M. W. Jarboe and of the partnership estate of M. W. Jarboe & Son, against O. M. Jarboe; thus leaving the probate court without jurisdiction to render judgment upon said counterclaims and set-offs; hence, its judgment was null and void, and the circuit court committed error in overruling appellant's motion to dismiss such proceedings and in overruling appellant's motion to set aside the judgment rendered by the circuit court. Emery v. Railroad, 77 Mo. 339; Atkinson v. Carter, 101 Mo. App.

477; Morrison Mfg. Co. v. Roach, 104 Mo. App. 632; Cauley v. Truitt, 63 Mo. App. 356; Garver v. Richardson, 77 Mo. App. 459; Smith v. Jacobs, 77 Mo. App. 254; Abernathy v. Moore, 83 Mo. 65. (3) But inasmuch as neither O. M. Jarboe nor H. M. Jarboe nor Van Trump presented any claims whatever to the probate court, against either the individual estate of M. W. Jarboe or the partnership estate of M. W. Jarboe & Son, the probate court was plainly without jurisdiction to entertain a suit by the administrator of either of said estates against either of said parties or to render a judgment against them. (4) Neither the probate court nor the circuit court had power, authority or jurisdiction to render a judgment in favor of the individual estate of M. W. Jarboe against the partnership estate of M. W. Jarboe & Son, for an alleged balance claimed to be due said M. W. Jarboe from said partnership estate; nor to render a judgment in favor of said partnership estate against O. M. Jarboe for an alleged balance claimed to be due from said O. M. Jarboe to said partnership estate, prior to a settlement of said partnership estate, and hence both of said judgments rendered by the circuit court are null and void. Bredell v. Baldwin, 27 Mo. 103; Leabo v. Renshaw, 61 Mo. 292; Jones v. Shaw, 67 Mo. 667; Bambrick v. Sims, 102 Mo. 158; Ross v. Carson, 32 Mo. App. 148; Story on Partnership (5 Ed.), sec. 348a; Scudder v. Ames, 142 Mo. 187; Browning v. Richardson, 186 Mo. 361; Roberts v. Hendrickson, 75 Mo. App. 484. (5) (a) The administrator of the individual estate of M. W. Jarboe could not at the same time prosecute and defend a claim in his favor as such administrator, against himself as administrator of the partnership estate of M. W. Jarboe & Son, and the proceedings on such claims are void. R. S. 1899, sec. 205; State v. Bidlingmaier, 26 Mo. 483, 31 Mo. 95; Clark v. Crosswhite, 28 Mo. App. 34. (b) O. M. Jarboe as surviving partner was entitled to an appeal from the allowance in favor of

the individual estate against the partnership estate. R. S. 1899, sec. 66; State v. Geiger, 45 Mo. App. 111; Smith v. Jacobs, 77 Mo. App. 254; Nenno v. Railroad, 105 Mo. App. 540. (6) Even had there been pending in the probate court any claims and counterclaims so as to give such court jurisdiction of them, it had no power, jurisdiction or authority to abdicate its functions, and to become the mere clerk and recorder of a so-called referee as was attempted to be done in this case. These courts are of limited jurisdiction, and that jurisdiction must be exercised in the cases, at the times and in the manner provided by law. They cannot, even with consent of parties, assume jurisdiction where the law has not granted it, nor can they, with or without such consent, delegate their jurisdiction to tribunals created by the whims and fancies of parties and their counsel, which are contrary to the plain letter of the law governing them. The law provides that "probate courts, in the exercise of their jurisdiction, shall be governed by the statutes in relation to administration, to guardians and curators of minors and persons of unsound mind, to apprentices, and such laws as may be enacted defining and limiting the practice in said courts." R. S. 1899, sec. 1765. In the face of these plain provisions of the governing statutes, and in the utter absence of any applicatory statute even giving color to the contentions of respondent, we do not see how it can be seriously asserted for a moment, that the proceedings in this case can be upheld. That they cannot be, is abundantly shown by the authorities cited. In addition, we cite the case of Powers v. Blakey, 16 Mo. 437. (7) There were no claims or counterclaims presented against these estates and parties and pending in the probate court in such form as to give that court jurisdiction of them. Notwithstanding the recitals of the agreement for a reference, and notwithstanding the long catalogue of "claims and counterclaims," almost exhausting the alphabet, so industri-

ously paraded in respondent's statement, the record is absolutely barren of any claim of any kind or character whatever by either Van Trump or H. M. Jarboe against either the individual or partnership estates. The theory that they had any claims seems to have been devised solely for the purpose of enabling the administrator to present his alleged counterclaims against them, and thus give the probate court some color of jurisdiction over such alleged counterclaims, which otherwise it would not have. It needs no argument to show that jurisdiction could not be conferred on this court of limited jurisdiction, by any such fiction as this. On this record, therefore, the judgment against H. M. Jarboe for $22.97 and against Van Trump for $127.75 on these alleged counterclaims is void, and the whole judgment of the circuit court is erroneous. In addition, the alleged claims of O. M. Jarboe were in fact not claims at all within the meaning of the law providing for the presentation of claims and demands against the estates of decedents. It is clearly implied from the statutes governing such matters that such claims are those where the claimant asserts that the estate owes him money, for which he asks the court to render a money judgment. The statute provides that "the court shall not allow any demand against any estate unless the claimant first make oath in open court, or file his affidavit with such claim, stating to the best of his knowledge and belief that he has given credit to the estate for all payments and off-sets to which it is entitled, and that the balance claimed is justly due; nor any credit in favor of any person indebted to such estate, unless the person seeking such credit shall make an oath in open court, or file his affidavit stating that he has given credit to the estate for all payments and off-sets to which it is entitled, and that his account or demand, as presented, is correctly stated." R. S. 1899, sec. 195. The alleged claims of O. M. Jarboe did not claim any debt due him, did

not ask any judgment against the estate, and were not sworn to, either in open court or by affidavit, as required by the statute. They stated that "claimant here asks that the following items be charged and added to the debit side of the account of M. W. Jarboe deceased, on his account with the late firm of M. W. Jarboe & Son on the books of said firm, being account A. and B. as follows," setting out the items. Even had it been a claim within the meaning of the law, the probate court acquired no jurisdiction to allow it, because it affirmatively appears from the record that it was not sworn to in open court, nor was it accompanied by the statutory affidavit. Fitzpatrick v. Stevens, 114 Mo. App. 497; Baldwin v. Whitcomb, 71 Mo. 651; Bick v. Tanzey, 181 Mo. 515. It is upon the pendency of this claim of O. M. Jarboe that the so-called counterclaim against him, and the judgment rendered thereon must rest. If the probate court had no jurisdiction of the claim, then the counterclaim has nothing to rest on, and must fall for want of support; and the judgment of the circuit court is erroneous and must be reversed. (8) Respondent need not have cited the cases in his brief to maintain that cases may be referred by consent in courts of general jurisdiction. All he needed to do was to cite or quote section 697, Revised Statutes 1899, which provides that "all or any of the issues of fact in the action may be referred upon the written consent of the parties." But neither this statute nor the cases cited by respondent have any application to the probate courts of this State. Even under this statute, it has been held that a divorce suit cannot be referred, although both parties consent in writing. The cases of Allen v. Hickam, 156 Mo. 49, and Hopper v. Hickam, 169 Mo. 166, are no authority for respondent's contention. Those were both cases pending in the circuit court, and a reference of them by consent was justified under the statute above quoted.

Moreover, the plaintiff in those cases did not attempt to take a nonsuit until after the matter had been fully heard by the commissioners or referees, their report filed, and plaintiff's objections and exceptions thereto overruled. In the case at bar, on the contrary, whatever claims appellant had pending in the probate court, he dismissed pending the hearing before the referee, and before the taking of testimony was completed. Had this been a suit pending in the circuit court, he would have had a right to dismiss even pending the settling of instructions to the jury, or after the giving of a demurrer to the evidence. (9) The attempt made in respondent's brief, to turn the proceedings in this case into a statutory arbitration is an afterthought, and certainly cannot succeed. An examination of the statute of arbitrations, we are confident, will convince this court that it has no application to the probate courts. The inference that it applies to such courts is sought to be drawn from the words in section 4822, Revised Statutes 1899, "or other court having jurisdiction of the subject-matter." These words first appear in the General Statutes of 1865, p. 771, sec. 1, chap. 198. They were doubtless inserted because there then existed, as there now exist, courts of common pleas having civil jurisdiction, and it was thought expedient to give them jurisdiction to enter judgments on awards of arbitrators. That there was no intention of giving such jurisdiction to probate courts is clear from the provisions of the other sections of this chapter. That arbitrations and references are distinct proceedings is also clear, because in the General Statutes of 1865, as well as in the prior revisions, there are separate and distinct provisions made respecting them, in the same chapter under the heading "Arbitrations and References." R. S. 1825, p. 137; R. S. 1835, p. 70; R. S. 1845, p. 121; R. S. 1855, p. 193; Gen. Stat. 1865, p. 771. In the revision of 1879, the provisions respecting references were embodied in the Practice Act as sections

3608 to 3627, inclusive, and they have since continued under this head. (10) This case is a good illustration of the folly of undertaking to improve on the well settled and orderly methods provided by law for the settlement of estates in the probate courts. We have here what is, in effect, a final adjudication and settlement of two estates, without the observance of any of the requirements of the law in regard to the making of such a settlement. We have also the referee finding that the administrator is entitled to a judgment on a note given by appellant to a former administrator, and also judgments against all the distributees on notes given to the administrator, none of which matters was embraced in the agreement of reference. Nevertheless, the probate court and the circuit court follow the finding of the referee, and render judgment on these notes as recommended by him. In addition to this, the referee and the courts undertake to adjust the accounts, as between the partners, of an unsettled partnership, prior to the payment of the partnership debts, prior to the time when, by law, a final settlement can be made, and without the administrator's having filed any settlement, final or otherwise. The result is confusion worse confounded. The judgment should be reversed. The administrator can then proceed to collect in the assets of both estates, pay the demands allowed against them, file his final settlements, stating the accounts as they should be stated, and thus give the parties in interest an opportunity to present any objections and exceptions they may have to such settlements, and have them disposed of according to law.

*Conkling & Rea* and *Morris & Atwood* for respondent.

(1) The probate court had authority to appoint a referee on the written request and consent of all parties in interest, although there was no specific statu-

tory authority for such appointment. Our probate courts, on subjects exclusively and originally confided to them, have extensive powers and jurisdiction for the purpose of doing everything necessary to the full and final administration of estates. R. S. 1899, sec. 192; Level v. Farris, 24 Mo. App. 461; Hoffman v. Hoffman's Executor, 126 Mo. 486. The Constitution gives to the probate courts jurisdiction "over all matters pertaining to probate business." As a matter pertaining to probate business the statute declares that the "probate court shall have jurisdiction to hear and determine all suits and other proceedings instituted against executors and administrators upon any demand against the estate of the testator or intestate." This provision seems broad enough to include all money demands of whatever nature, whether legal or equitable, and so it was held in Hammons v. Renfrow, 84 Mo. 341. It matters not whether the demand be regarded as legal or equitable, the statute confers upon the probate court ample jurisdiction to determine the same. Hammons v. Renfrow, 84 Mo. 341; In re Estate of Elliott, 98 Mo. 379; Leitman's Executor v. Leitman, 149 Mo. 112; Johnson v. Johnson, 72 Mo. App. 386; Johnson v. Beazley, 65 Mo. 256; French v. Stratton, 79 Mo. 560; Titterington v. Hooker, 58 Mo. 593; Pearce v. Calhoun, 59 Mo. 271; Ensworth v. Curd, 68 Mo. 282; 1 Woerner on Administration, sec. 149, p. 340; Rice's American Probate Law, p. 265. (2) Appellant, with the other parties in interest, voluntarily entered into a written stipulation requesting the probate court to appoint a referee whose report should be confirmed by the judgment of said court and be binding upon all parties. This request was made a rule of court. A referee was appointed and protracted hearings had in which appellant in person and by attorneys participated. Under these conceded facts, appellant could not withdraw his consent, revoke the reference, rescind the rule or dismiss his demands in an effort to defeat an

adverse finding of the referee. Reeves v. McGlochlin, 65 Mo. App. 537; Tucker v. Allen, 47 Mo. 488; Cochran v. Bartell, 91 Mo. 636; Allen v. Hickam, 156 Mo. 49; Hopper v. Hickam, 169 Mo. 166; R. S. 1899, sec. 4822; Bridgman v. Bridgman, 23 Mo. 272; Reily v. Russell, 34 Mo. 524; Valle v. Railroad, 37 Mo. 445; Squires v. Anderson, 54 Mo. 193; Neely v. Buford, 65 Mo. 448; Cochran v. Bartle, 91 Mo. 636. Arbitrations are regarded favorably by the courts and liberally construed. Tucker v. Allen, 47 Mo. 488; Stiringer v. Toy, 33 W. Va. 86. Zehner v. Lehigh, 187 Pa. St. 487. (3) If it be conceded that the matter was not the proper subject of a reference, in the first instance, yet appellant by his written stipulation, expressly consented and agreed that a rule of reference be entered, and that a judgment should be entered on the report of the referee. All error is cured or taken away by this request and consent, and a judgment on a report of the referee, pursuant to such agreement, is as valid as if entered on a verdict. Allen v. Hickam, 156 Mo. 49; 24 Am. and Eng. Ency. Law, p. 219; Newcomb v. Wood, 97 U. S. 581. The finding of the referee and his report is similar to and stands, in some respects, as a verdict of the jury, and will not be disturbed if there was testimony to sustain it. Young v. Powell, 87 Mo. 128; Benevolent Assn. v. Kribben, 48 Mo. 37; Franz v. Dietrick, 49 Mo. 95. A reference by consent cannot be revoked. Robinson v. Nelson, 43 Pac. 64; Dexler v. Young, 40 N. H. 130; Ferris v. Munn, 22 N. J. L. 161; Keystone Driller Co. v. Worth, 117 N. C. 515; Perry v. Tupper, 77 N. C. 414; Smith v. Hicks, 108 N. C. 248; Jeffers v. Hazen, 69 Vt. 456; Sanders v. Fire Dist., 70 Vt. 561. The effect of appellant's action in applying for and procuring a reference was to waive his rights to a trial, in the first instance, before the probate judge or a jury. Garrity v. Hamburger Co., 136 Ill. 499; Hewitt v. Egbert, 34 Ia. 485; Railroad v. Gardner, 19 Minn. 132; McKinney v.

London, 18 Misc. (N. Y.) 565; Battle v. Mayo, 102 N. C. 413; Smith v. Hicks, 108 N. C. 248; Blevins v. Morledge, 5 Okla. 141; Rhodes v. Russell, 32 S. C. 585; Wheeler v. Ralph, 4 Wash. 617. The jurisdiction of the action or the court's power to make the order of reference was waived by the written request and conduct of appellant. Shepherd v. Shepherd, 108 Mich. 82; Maxfield v. Scott, 17 Vt. 634; Hix v. Sumner, 50 Me. 290; Waterman v. Railroad, 30 Vt. 610; 24 Am. and Eng. Ency Law (2 Ed.), 220; 20 Am. and Eng. Ency. Law (1 Ed.), 663; Waterman v. Waterman, 38 How. Pr. 36; Yates v. Russell, 17 John. 461. (4) Appellant by his written stipulation, having procured the appointment of a referee by a rule of the probate court entered at his request, and having participated in the hearing before the referee, is now estopped from challenging the jurisdiction of the probate court to make such appointment. Bunce v. Beck, 46 Mo. 327; Snodgrass v. Emery, 66 Mo. 462; Longworth v. Aslin, 106 Mo. 155; Montgomery v. Heilman, 96 Pa. St. 44.

GRAVES, J.—This cause reaches this court from an appeal taken by O. M. Jarboe from a judgment entered against him by the circuit court of Carroll county. The cause originated in the probate court of said county and from a judgment there the said O. M. Jarboe had appealed to the circuit court. Pertinent record facts and history of the case are as follows:

M. W. Jarboe and O. M. Jarboe were partners in the milling business from 1891 to 1904, at which time the copartnership terminated by the death of M. W. Jarboe. M. W. Jarboe left as his heirs his widow and three children, i. e., O. M. Jarboe, H. W. Jarboe and Jessie Van Trump. The widow qualified as administrator of both the partnership and individual estates. She served but a short time when she died, and O. M. Jarboe, H. W. Jarboe and R. W. Van Trump, husband of Jessie Van Trump, qualified as administrators *de*

*bonis non,* of both estates. For reasons not clearly appearing in the record, but easily surmised, this administration was of but short duration. Their letters were revoked and Ralph F. Lozier was appointed and qualified as administrator *de bonis non* of both estates. Just how the several probate orders were made does not appear of record, but from start to finish it seems that there was a desire to keep the administration of the two estates in the same hands. After Mr. Lozier's appointment, all the parties interested, on August 10, 1905, entered into a certain written agreement, which we set out in full because of the admissions made therein, as well as for the further reason that it forms the sole basis for appellant's contentions in this court. This agreement was filed in the probate court of Carroll county, and below will be found the court entry containing the agreement:

"In the probate court of said county on the 10th day of August, 1905, the following, among other proceedings were had, *viz*:

"In the matter of the estate of M. W. Jarboe, deceased.

"In the matter of the partnership estate of M. W. Jarboe & Son.

"Comes now the administrator, *de bonis non,* Ralph F. Lozier, and also comes O. M. Jarboe; H. M. Jarboe and R. W. Van Trump, in person and by their attorneys, all of whom enter their appearance and waive notice of the claims here in court filed.

"Comes now R. M. Van Trump, and files a claim against the individual estate of M. W. Jarboe, deceased, in the sum of $.........

"Also comes O. M. Jarboe and files his claim and demand against the individual estate of M. W. Jarboe, deceased, and also files claim and demand against the partnership estate of M. W. Jarboe & Son in the sum of $..............

"Also comes the partnership estate of M. W. Jarboe & Son by Ralph F. Lozier, administrator, *de bonis non,* and files certain claims and demands against the individual estate of M. W. Jarboe, deceased.

"And whereas, each of the several parties have filed counterclaims against the other parties which are interposed as a defense against said claims and demands, as above recited;

"And whereas, in order to finally settle and adjust the said conflicting claims and demands, the said parties have entered into a certain written stipulation and agreement as follows:

" 'Whereas, an administration of the individual estate of Milton W. Jarboe, deceased, is pending in the probate court of Carroll county, Missouri:

" 'And whereas, the partnership estate of M. W. Jarboe & Son is being administered in connection with the administration of said individual estate, by Ralph F. Lozier, administrator *de bonis non,* of said estate;

" 'And whereas, R. W. Van Trump has filed in the probate court aforesaid, a certain demand and claim against the individual estate of M. W. Jarboe, deceased, and also against the partnership estate of M. W. Jarboe & Son.

" 'And whereas, both of said estates have a counterclaim and demand against said R. W. Van Trump, which counterclaim and demand have been interposed against said claims of said R. W. Van Trump;

" 'And whereas, O. M. Jarboe, surviving partner of the partnership estate of M. W. Jarboe & Son, has filed a certain claim and demand against said individual estate of M. W. Jarboe, and also against the partnership estate of M. W. Jarboe & Son;

" 'And whereas, both of said estates have demands and counterclaims against said O. M. Jarboe, and have interposed the same as a defense against said claims and demands of said O. M. Jarboe;

" 'And whereas, the partnership estate of M. W. Jarboe & Son has filed certain claims and demands against the individual estate of M. W. Jarboe, deceased;

" 'And whereas, the individual estate of M. W. Jarboe has filed certain demands and counterclaims against the claims and demands of said partnership estate as aforesaid;

" 'And whereas, all of said claims, demands and counterclaims aforesaid are now pending and undetermined in the probate court aforesaid;

" 'And whereas, it is the desire of the respective estates and of all claimants aforesaid, and of all heirs and distributees of said estates to have the aforesaid claims, demands, and counterclaims, fully, finally, and expeditiously determined and adjudicated, and to this end have entered into the following stipulations, to-wit:

" '1st. Ralph F. Lozier, administrator *de bonis non*, of the estates aforesaid, has waived and hereby waives notice of the presentation of the respective demands as aforesaid.

" '2d. The respective claimants aforesaid have waived and hereby waive notice of the presentation of and filings of the respective counterclaims, and demands as aforesaid.

" '3d. The administrator, *de bonis non*, of the estates aforesaid, and all of the claimants aforesaid, in open court enter their voluntary personal appearance, waiving all notice or service of process and respectively submit themselves and the matters in controversy aforesaid, to the jurisdiction of the probate court aforesaid for adjudication.

" '4th. The probate court aforesaid, is hereby authorized and directed by order made and entered of record, to appoint some attorney-at-law as referee, to whom shall be referred by such order of court, all of the claims, demands and counterclaims, aforesaid, for determination and adjudication.

" '5th. It is stipulated and agreed that all of the aforesaid claims, demands and counterclaims, are and shall be consolidated, determined and adjudicated, in one finding by said referee.

" '6th. The said referee shall within ten days from the date of his appointment, proceed to take testimony offered by the respective claimants, estates or parties to said controversies, and at the conclusion of the testimony shall forthwith make and return to said probate court by September 15, 1905, his conclusions of fact and law, together with his recommendations as to the judgment or judgments to be entered on the respective claims, demands or counterclaims, and on the filing of the report of the said referee, in the probate court, aforesaid, it is agreed that said probate court may and shall approve, and in all respects confirm, the report aforesaid and all parts thereof.

" '7th. All testimony taken or offered before said referee shall be taken in stenographic notes by some competent stenographer, and thereafter transcribed; the parties hereto waiving the signing of the testimony by the respective witnesses, after the same has been transcribed and certified to by the stenographer.

" '8th. It is agreed that the rules of evidence applicable to the courts of the State of Missouri, shall govern this reference and that objections to the introduction or exclusion of evidence shall be made at the time such evidence is offered, and exceptions to the rulings made shall be deemed saved.

" '9th. The referee, for good cause shown, may continue or postpone the hearing of said cause for a reasonable time.

" '10th. A transcript of all the proceedings before said referee shall accompany his report, and shall become a part of the record in said cause.

" '11th. Within five days after the filing of said report of said referee, in the probate court aforesaid, any claimant, estate or party to said proceedings, or

heir or distributee of said estates, may take an appeal from the order and judgment of the probate court, and from the report of said referee, by filing a statutory affidavit for an appeal and bond for costs of appeal. It is expressly stipulated and agreed that said appeal shall be returnable to the September term, 1905, of the Carroll Circuit Court, the parties hereto waiving the statutory notice of appeal.

" '12th. It is expressly stipulated and agreed that on such appeal, said claims, demands and counterclaims, shall not be tried anew, but on such appeal the judge of the Carroll Circuit Court shall review the evidence taken before said referee, and the conclusions of fact and law, and the finding of said referee, and shall make and enter of record a judgment or judgments, determining and finally adjudicating all of the claims, demands and counterclaims aforesaid, which judgment shall be final, conclusive and binding upon the estates aforesaid, the claimants aforesaid, and of all parties hereto.

" 'In consideration of this reference and the mutual agreements herein contained, each and all of the parties hereto expressly waive the right to appeal from the order or judgments of the circuit court aforesaid.

" 'In witness whereof, the parties have hereunto signed their names, the 10th day of August, A. D. 1905.

" 'Executed in triplicate.

" 'Estate of M. W. Jarboe, deceased, by Ralph F. Lozier, Admr. *de bonis non*,

" 'Estate of M. W. Jarboe & Son by Ralph F. Lozier, Admr. *de bonis non*.

" 'O. M. Jarboe.

" 'H. M. Jarboe.

" 'R. W. Van Trump.

" 'Virgil Conkling.

" 'Hugh K. Rea, Atty. for Van Trump.

" 'Wm. G. Busby, Atty. for O. M. Jarboe. and H. M. Jarboe.' "

Pursuant to this agreement, the probate court appointed S. J. Jones, an attorney-at-law, referee, who heard the case and made his report to the probate court as per the terms of the written agreement, first having been sworn faithfully to perform the duties of his said office.

From the report of Mr. Jones, found in the record before us, it appears that he took the prescribed oath August 24, 1905; that by agreement of all the parties signing the agreement, set out above, the hearing of the matters in dispute was set for that day; that by agreement of said parties, who were all present in person and by attorneys, except H. M. Jarboe, who was present but had no attorney, the hearing of the controversy was begun; that by agreement of all parties, a careful examination was made by the referee, and all parties in interest, of the books of account of the late firm of M. W. Jarboe & Son; that by agreement of all parties the further hearing was continued to August 25th, at which time all parties were present and further examination of said accounts was made; that by agreement the further hearing was adjourned over to August 28th, on which date all said parties again appeared and a further hearing had; that by agreement of all parties, the hearing was continued to August 29th, and was resumed on that day with all parties present; that by agreement of all parties the further hearing was continued to September 1st, and again resumed on that day with all parties present; that by agreement of all parties, the further hearing was adjourned to October 5th, and on said day again so adjourned to October 10th, and on October 10th again so adjourned to October 27th, at which date O. M. Jarboe, this appellant, requested that the further hearing be continued to October 31st, and such continuance was so had; that on October 31st, by agreement, the further hearing was continued to November 1st, and on November 1st the hearing was resumed, but

being unable to conclude it, on the application of the attorneys of O. M. Jarboe, the further hearing was continued to November 10th.

From said report, it further appears that on November 2, 1905, H. M. Jarboe served notice that he did not want to be charged with further expenses in said hearing after the date of November 1st. On November 10th, O. M. Jarboe notified the referee that he had filed a motion in the probate court to revoke the appointment of the referee, and neither O. M. Jarboe nor his attorneys appeared before the referee on that day. The proceedings on November 10, 1905, are thus detailed by the referee:

"On Friday, November 10, 1905, come all of the parties in interest and their attorneys (except O. M. Jarboe and his attorneys), and the further hearing of the issues involved in this reference was resumed and the taking of testimony was on said day completed; that by agreement of all parties in interest and their respective counsel, much of the investigation and hearing heretofore made and had was in an informal manner and consisted of a detailed and exhaustive examination of the books of account of the late firm of Jarboe & Son, extending over a period of nearly thirteen years, and during said investigation and examination of said books of account, practically all of the disputed items of account were settled and agreed upon by the parties in interest and opposing counsel.

"The further evidence offered by the parties will appear by the transcript thereof hereto annexed, which, with the exhibits offered and referred to in said hearing and which are attached to the transcript of the evidence, make a part of this report."

Upon November 20, 1905, the referee filed a detailed finding of facts and recommended a specific judgment as between the parties, and filed the same with the probate court.

The probate court overruled O. M. Jarboe's motion to vacate the order appointing the referee, approved the report of the referee and entered its judgment in accordance with such report. This judgment found O. M. Jarboe liable to the estate of M. W. Jarboe & Son in the following sums, i. e., $5000 and $6500, as money loaned or advanced to him, and in the further sums of $675 with interest at 6 per cent from March 2, 1903, and $576.29 with interest at 6 per cent from April 5, 1905.

From such judgment, O. M. Jarboe appealed to the circuit court, where he filed his motion to dismiss said cause, assigning among other things the want of jurisdiction both in the probate court and in that court. This motion was overruled and the circuit court heard the case as per the stipulation first herein set out, upon the evidence taken by the referee and his findings of facts and report thereon, and entered its judgment confirming the judgment recommended by the referee and entered by the probate court. From such judgment, O. M. Jarboe has appealed to this court. We have made this statement more comprehensive than would ordinarily have been necessary, but have so made it purposely in view of certain statements made in the reply brief filed in behalf of O. M. Jarboe, challenging statements made in respondents' brief.

The foregoing fully states the case for all purposes suggested by the briefs.

I. It is urged by counsel for appellant that there were no claims pending in the probate court by either Van Trump or H. M. Jarboe against either the individual or copartnership estate, and therefore there was no basis for the filing of counterclaims by the administrator de bonis non and that the judgments rendered against these two parties are null and void. These parties are lodging no complaints against such judgments, not having appealed. An examination of

the written agreement spread upon the records of the probate court, and in the record of the case in this court, shows that not only did these two parties and the administrator of the two estates admit in writing that such claims had been filed and were pending, but this appellant over his own signature admits the same thing. With this written admission in evidence it ill becomes appellant now to say that there were no such claims pending for determination and that they were not properly presented for determination. Nor does it become appellant in view of his written admissions to say that he had filed no legal demands against the two estates and thereby undertake to undermine the counterclaims upon which judgments were entered. In the contract, the appellant makes the following written admissions:

"And whereas, O. M. Jarboe, surviving partner of the partnership estate of M. W. Jarboe & Son, has filed a certain claim and demand against said individual estate of M. W. Jarboe, and also against the partnership estate of M. W. Jarboe & Son;

"And whereas, both of said estates have demands and counterclaims against said O. M. Jarboe, and have interposed the same as a defense against said claims and demands of said O. M. Jarboe."

In view of this admission and in view of the further admission upon his part that his said claim and demands were such as should be heard and determined, and further his agreement to have them heard and determined, appellant is hardly in position to now gainsay these solemn written admissions, made by him as a matter of record in the probate court.

With this disposition of the rubbish thrown into the case, we can now take up the real issues.

II. That the probate court had jurisdiction of the subject-matter and the persons there can be no doubt. Probate courts have jurisdiction to hear claims against an estate, and incidentally to hear all offsets or counter-

claims in favor of the estate, where filed, as against a claim theretofore filed. [R. S. 1899, secs. 192, 193, 194 and 204; Mitchell v. Martin, Admr., 63 Mo. App. 560; Grocer Co. v. Est. of Painter, 66 Mo. App. l. c. 482.]

In the latter case it is said: "The jurisdiction of the probate court to allow demands against the estate in the hands of the personal representative is defined by statute. [R. S. 1889, secs. 191, 192, *et seq.*] Such demands, when presented, are subject to 'offsets and other defenses' by the administrator, and, if exceeded by such offsets, judgment may be rendered for the administrator for the excess."

And in the Mitchell case, supra, speaking of the present administration statutes, cited above, GILL, J., after reviewing the old statute, said: "It was, we think, the manifest purpose of these amendments to the administration statute, to provide for just such a proceeding as we have here—to authorize the probate court to adjust and settle the differences between the estate and the parties presenting claims for allowance and award judgment in favor of him whose demand is the larger. While probate courts are classed as courts of limited jurisdiction, and are authorized to do those things, or to exercise such jurisdiction only as is expressly given them by the Legislature, yet the history of such legislation shows a manifest disposition to enlarge their powers and jurisdiction, so as to clothe them with the necessary authority to fully and finally administer the estate entrusted to them."

There can be no question, therefore, of the probate court of Carroll county having jurisdiction of all the parties, because they waived all formal notice and by writing entered their appearance, nor can there be any question of such court, under the statutes, having full and complete jurisdiction over the subject-matter, admitted by the parties to be pending before it. By their written admissions the parties have described for

this court, as well as for that court, the character of the subject-matter then before the probate court. Of such matter the probate court had jurisdiction. Remembering then that the probate court of Carroll county had jurisdiction of the subject-matter and of the parties, we go next to the vital question in this case.

III. We reach now the vital question in this case. This question is raised first by the motion of O. M. Jarboe in the probate court to set aside the order of reference. This motion is to the effect that the probate court was without power to appoint a referee or refer the cause, and further that the agreement upon which the reference was made "is contrary to law and void." The motion does not challenge the jurisdiction of the probate court over either the parties or the subject-matter, but only goes to the power, right or jurisdiction of the court to appoint the referee and refer the cause. There are several questions involved in this contention, all of which are closely allied. They are, (a) has a probate court the power to appoint a referee; (b) can parties having pending before such court matters within its jurisdiction consent to such an appointment by the court, even though the court has no such power; (c) if such parties do consent to such an appointment of a referee, is such referee, so named, one appointed by the court or one by parties themselves; (d) under the contract spread of record, can the parties thereto raise a question as to the right of this referee to act and the right of the probate court to enter judgment as per the agreement?

We shall discuss all except the first of these questions together in this paragraph. To do so we must get at the force and effect of this contract, under the situation of the parties at that time. From the signed admissions of the parties, as evidenced by the contract, there were pending before the probate court both claims

and counterclaims or offsets in which the several parties were interested. Of these matters and of the parties such court, a court of record, having the power to enter an order or rule of court, had jurisdiction. Under these conditions the contract or agreement was made, entered of record and made an order or rule of the court. The parties agreed upon all things to be done and how they were to be done, except the name of the referee, arbitrator or whatever such party may be called. As to who he should be was left to the judge of the court by the agreement. The judge of the court taking this. agreement as authority, designates the particular person, within the terms of the agreement. Under such facts the judge of probate might well be denominated the agent of all parties under the agreement to select a referee, arbitrator, auditor, or whatever the party be designated or called. In Davis v. Forshee, 34 Ala. l. c. 109, touching a similar question, STONE, J., has well said: ''The fact that in this case the arbitrators were named and chosen by the clerk of the court, cannot alter the principle. This power was expressly conferred on him by the terms of the submission; he acted as the agreed agent of both of the parties; and we must presume, in the absence of evidence to the contrary, that the persons selected were satisfactory to the litigants.''

The agreement, when summarized, says to the probate court of Carroll county, (1) claims and offsets are pending in your court in two estates closely entwined and intermingled, (2) all parties are anxious to have such matters speedily and finally determined, (3) to that end, appearances will be and are entered and notices and other formalities waived, (4) we have agreed to a reference in this case but have not agreed upon the person, but you, for us, may name some attorney for and in our behalf to whom we have agreed the matters may be referred, (5) ''it is agreed that said probate court may and shall approve, and in all

respects confirm the report aforesaid and all parts thereof" (meaning the report of the referee), (6) each party reserves the right of appeal, but on appeal the cause shall be heard upon the same facts and evidence as taken and found by the referee.

To our mind this is a reference by agreement of parties and nothing more, with the additional agreement that after the parties through their referee reach a finding, such finding shall be entered as a judgment in the cause. Summarizing further, the parties agree in open court that their matters shall be adjusted by a disinterested lawyer, and his judgment is agreed upon as the judgment which the parties will have entered, reserving only a right of appeal.

Reference by consent is thus defined in 34 Cyc., p. 777: "The power of the court, with the consent of the parties, to refer a case pending before it is incident to all judicial administration where the right exists to ascertain the facts as well as to pronounce the law. Except where otherwise provided by statute, the rule is that any or all the issues in any pending action may be referred by the consent of the parties, but generally the reference cannot extend to matters outside the suit."

The Cyclopedic Law Dictionary, after giving a general definition of the word "reference," has this to say: "Generally speaking, any cause may be referred with the consent of the parties, and any cause in which there is no constitutional right to a jury trial may be referred, in the discretion of the court."

In Newcomb v. Wood, 97 U. S. l. c. 583, Mr. Justice SWAYNE thus speaks: "The power of a court of justice, with the consent of the parties, to appoint arbitrators and refer a case pending before it, is incident to all judicial administration, where the right exists to ascertain the facts as well as to pronounce the law. *Conventio facit legem.* In such an agreement there is nothing contrary to law or public policy."

In Crocker v. Currier, 65 Wis. l. c. 665, the court said: ''A question of practice will first be disposed of. On motion of the defendant the court sent the case to a referee to hear, try, and determine the issues therein. The order of reference recites that this was done with the consent of both parties given in open court. It is not denied that such consent was given. On the hearing before the referee, however, both parties claimed that the case was not referable under the statute, and that the referee had no jurisdiction to hear, try, and determine the issues. The point is not well taken for two reasons: (1) Any issue in any action may be referred if the parties consent thereto, and in this case they did so consent, and are bound thereby.'' The second reason assigned by the court was that the court had a right to refer that particular case under the statutes of the State. The first reason assigned has no reference to a statute, but is discussing what can be done by the agreement and consent of the parties. The question there ruled is, that whilst the courts within themselves may have no power or jurisdiction to refer a case, yet when the case is pending and such court has the power to hear and determine both the facts and the law, the parties by rule or order of court may consent to a reference.

Along this line is 34 Cyc., p. 792, where in stating the rule in Federal cases, it is said: ''But except where authority is granted by statute, the Federal courts cannot compulsorily order a reference to hear and determine a common-law action, although they may make an order of reference where the parties consent thereto.''

Nor is one precluded from thus consenting by reason of being an administrator or executor. Note 18 Cyc., p. 516, whereat it is said: ''An executor or administrator has the right, both at common law and under express statutes in some jurisdictions, to submit to arbitration claims against the estate which he rep-

resents. No special authority from the probate court is required for the exercise of this right, nor is the right affected by statutory provisions authorizing a reference of disputed claims.'' It is true that at common law he acted at his peril and if the award happened to be less than what could have been obtained by a suit at law, he might be liable, but the agreement to arbitrate was always good.

The case of Yates v. Russell, 17 Johns. (N. Y.) 461, is very much like the one at bar in principle. In that case there was a written agreement to refer the matters in issue to three persons named and that judgment be entered upon their finding. The action was one in tort and was not referable under the New York statute pertaining to the reference of cases. As in the case at bar, the trial court in the New York case had jurisdiction of the parties and the subject-matter, but it would have gone beyond its power had it ordered a reference. To have ordered a reference would have been to have exceeded its powers and jurisdiction under the laws of the State, yet the judgment upon a reference by agreement was held to be valid. So in the case at bar, we might grant for the sake of argument that the probate court had no power to refer a cause, but when it has jurisdiction of the parties and of the subject-matter, it can enter an agreed judgment for such parties and it can enter an agreed rule of reference, by which the parties are bound.

The learned chancellor in the Yates case, supra, has this to say about just such an agreement as we have before us: ''There is no doubt that the case was not within the act, authorizing the court with or without the consent of parties to refer certain causes to referees; but the question is, whether either party can be permitted to allege for error a rule for reference, and a judgment on the report, when the reference and the judgment were in pursuance of his own consent in writing. It was agreed by the parties, by their

respective attorneys, that a rule should be entered to refer the cause to three referees, and that they, or any two of them, report with all convenient speed, so that judgment might be entered thereon at the next term. This agreement in writing, subscribed by the attorneys, was acted upon and carried duly into effect. It is not pretended there was any imposition or collusion in the case. It was an agreement made in good faith, and I think that good faith requires that it should be truly and accurately observed. When the agreement mentioned that judgment might be entered upon the report, it meant a regular technical judgment, as is entered in other cases upon the report of referees. The words are not susceptible of any other meaning, nor ought we to impute any other meaning to the terms, especially when they are used by professional men in the ordinary course of a suit. I am, therefore, of the opinion, that a party to that agreement must be held to be concluded by it, and that he cannot now allege that the reference and judgment were not warranted by law. I think that it would be establishing a precedent that might be very pernicious in its consequences. There might be, and no doubt were, very good and sufficient reasons in the minds of the parties, for withdrawing from a public trial so painful and distressing an investigation as an action for adultery involves; and I see no good reason why the agreement of the parties to withdraw the trial from a jury to a more retired examination, before well selected referees, should be discountenanced or rejected. The doctrine established in analogous cases, appears to warrant the entry of judgment by consent in a case like this, and I am sure that common sense does not revolt at it. In one of the resolutions of the Court of K. B., in Dormer's case, 6 Co. Rep. 40, it was stated to be the law, that if twelve jurors be sworn and one depart, another may be sworn by consent to supply his place, and 34 Edw. III. was referred to. So it was said that

if the parties in a real action consent to dispense with the legal qualifications of two of the four electors of the grand assize, it was good; and the court adopted the maxim that *consensus tollit errorem;* 'and divers other cases were put,' said Lord Coke, 'where consent of the parties shall alter the form and course of the law.' So, in Turner v. Barnaby, 12 Mod. 564, the attorneys of the parties named the jurors to be returned by the sheriff, and being by consent, it was held good; and the like assent, in a like case, was held valid in 6 R. II [Challenge 102, cited in Viner, tit. Error, Z. 6, 5.] And in a writ of right, according to DODDERIDGE, J. (Palm. Rep. 100), the parties may agree that the trial be by twelve common jurors, and not by the grand assize of sixteen jurors, which is the number established by law in that action. These cases, which I have referred to, are taken principally from the ancient law, and they are all cases in which the consent of parties was applied to vary the regular and established mode of trial by jury. To take another juror, without necessity, after the twelve have been sworn, or to dispense with the legal qualifications of jurors, or to allow the parties to select the jury, or to reduce the grand assize from sixteen to twelve men, is a stretch of power almost equal to the taking of three referees, instead of the twelve jurors; yet all those acts have been held good, when done by consent, and that too in ancient times, when the forms of law were adhered to with great strictness, and when the courts were not much disposed to indulge in very liberal and enlightened views of justice.''

When judgment is entered under such an agreement it is considered equivalent to a judgment by confession. The agreement in Yates v. Russell is in substance like the one in the case at bar. Discussing the judgment in the Yates case, in Camp et al. v. Root, 18 Johns. (N. Y.) 1. c. 23, the court said: ''In the case of Yates v. Russell, in the Court of Errors, it was

expressly stipulated by the attorney for the defendant, that if the referees reported against him, judgment should be entered against him for the sum so reported. And that was considered equivalent to a plea of confession for that amount."

In Farrington v. Hamblin, 12 Wend. (N. Y.) l. c. 213, SAVAGE, C. J., in discussing a certain agreement to arbitrate and enter judgment upon the award, says: "This clearly was not a reference under the statute; no rule was entered referring the cause and appointing referees. The arbitrators were not officers of the court, but judges of the parties' own choosing. The court had no control over them, 1 Johns. 315, 492; 9 Cow. 136; and but for the stipulation to enter judgment, the court would not entertain any motion in relation to the subject. But it may be said here as it was said in Yates v. Russell, 17 Johns. 465: the question is whether either party can be permitted to allege for error the entry of a rule for judgment, when that judgment is in pursuance of his own consent in writing, and under his seal. It was there held that the parties were concluded by their agreement, and should not be permitted to allege that the reference and judgment were not warranted by law. The only difference between that case and this is, that there a rule was entered referring the cause, and here there was not: the submission authorized only the entry of the judgment on the award. In that case, however, as in this, all depended upon the agreement of the parties; that case was not referrible; the whole proceeding, therefore, would have been irregular but for the maxim *consensus tollit errorem*. In this case there might have been a long account, but there was no rule to refer; and the rule for judgment is sustained by the same maxim which sustained the rules in that case. I am therefore of the opinion that the judgment, being founded upon the consent of the defendant appearing upon the record, is valid."

The case of Heckers v. Fowler, 2 Wall. 123, is in point. In the trial of that case in the U. S. Circuit Court by consent of parties the cause was sent to referees, upon whose report the clerk of said court entered up judgment, from which an appeal was taken to the Supreme Court. It was there urged that there was no statute authorizing such a reference, and there was not, but the judgment was affirmed. Among other things the court said: "Practice of referring pending actions under a rule of court, by consent of parties, was well known at common law, and the report of the referees appointed, when regularly made to the court, pursuant to the rule of reference and duly accepted, is now universally regarded in the State courts as the proper foundation of judgment." Among the cases cited is Yates v. Russell, supra. For other and further authorities along the same line as to consent references, see 24 Am. and Eng. Ency. Law (2 Ed.), p. 220.

The appellant in this cause, after having appeared day after day before the referee and after having been, no doubt, convinced from an examination of the firm books, that a finding must go against him, on the last day served notice that he had filed a motion to vacate the order of reference. Not only so, but from the record it would appear that he had changed counsel. We hardly think the probate court was in error when it refused to sustain such motion. The universal modern rule seems to be that where a consent reference is had by an order or rule of court, neither party can revoke the reference, nor his consent to the reference. [Robinson v. Nelson, 43 Pac. 64; Dexter v. Young, 40 N. H. 130; Ferris v. Munn, 22 N. J. L. 161; Keystone Driller Co. v. Worth, 117 N. C. 515; Smith v. Hicks, 108 N. C. 248; Jeffers v. Hazen, 69 Vt. 456; Sanders v. Fire Dist., 70 Vt. 561.]

Michigan has a statute which provides that a cause may "be referred to such person or such three persons

as may be agreed upon by the parties, or appointed by the court in case the parties fail to agree.'' In Shepherd v. Shepherd's Estate, 108 Mich. 82, the lower court had appointed two referees instead of one or three as provided. This point was made in the Supreme Court and the court there said: ''We think that, if the statute should be so construed, defendant is not in a position to raise this question. The appointment of two referees was agreed upon, and the parties appeared before them, and submitted all their matters, and defendant for the first time raised the question when the order of confirmation was asked in the circuit court. Objections to the form of the order of reference or to the appointment of referees have been deemed to be waived by proceeding with the reference; and so the objection that the court had no jurisdiction to make the order of reference is waived in like manner.''

So too it has been held that the submission of a matter to a referee is a waiver of formal defects in the writ and in the service thereof. [Hix v. Sumner, 50 Me. 290, and cases cited therein.]

In the case at bar the probate court having jurisdiction of the persons and the subject-matter, the only irregularity, if such it be, was in permitting the parties to ascertain what judgment was to be entered through a referee. That the parties could have gone into that court and filed a written stipulation or agreement for a judgment and had a judgment entered without trial can hardly be questioned. In such case there would be a waiver of trial, either by the court or jury. That such a waiver could be made and is continuously being made in such cases we think clear. The agreement for the judgment at bar waives nothing more.

Again the error, if error it be, is only one as to a matter of practice, i. e., the means of reaching the result to be incorporated in the judgment. In this case the maxim ''*consensus facit legem*'' has peculiar

application. The probate court had the power to hear the evidence and consider the law of the cases pending before it. Having such power it could by consent of parties enter a rule or order of reference. As said in the Alabama case, supra, the mere fact that the parties agreed upon leaving the selection of the referee to the judge of the court does not change the situation. The parties, instead of describing the character of the referee in their agreement, might have gone further and designated him *eo nomine*. But according to the Alabama case, supra, the result is the same in a consent reference. The parties having agreed to a reference and appeared before the referee cannot revoke the same and are estopped from saying that the case was not referable. So that without passing at this point upon the general right of a probate court to appoint a referee, the probate court was not in error in entering the judgment as it did. The action of the circuit court on appeal therefrom we consider next.

IV. In the circuit court the jurisdiction of both courts was attacked by motion of the appellant appearing specially for that purpose. What we have said in the preceding paragraph practically disposes of all the contentions here. We hold that the judgment in the probate court is an agreed judgment, or one entered by consent, and none of the parties are in position to question the same further than by their agreement permitted. By this agreement either party was allowed the right to an appeal to the circuit court, but it was agreed that in event of an appeal the cause should there be submitted to that court upon the evidence taken before the referee. Such an agreement is good and is binding upon the parties. It is not an uncommon thing for parties to an action in the circuit court to agree upon the course and manner of the submission and the things to be considered in the submission.

It is evident from the agreement forming the basis of this consent reference, that it was the purpose of the parties to settle every matter connected with these two closely entwined estates and put a rest to all controversies. This the decree *nisi* has done. This the parties wanted done. This the parties solemnly consented in writing should be done. And this, if rightfully and lawfully done, should not be disturbed. We think there is nothing in the numerous contentions of appellant to justify us in opening up these two estates by reversing this judgment. The case here is but a struggle upon the part of appellant to escape the force and effect of his own agreement for a rule or order of reference, and the reference itself, after he discovered from the books that he had no standing in his alleged claims.

It appears from the referee's report thus: "That by agreement of all parties in interest and their respective counsel, much of the investigation and hearing heretofore made and had was in an informal manner and consisted of a detailed and exhaustive examination of the books of account of the late firm of Jarboe & Son, extending over a period of nearly thirteen years, and during said investigation and examination of said books of account, practically all of the disputed items of account were settled and agreed upon by the parties in interest and opposing counsel."

From this may be gathered the reason of appellant in changing counsel and attacking his own solemn agreement. It appears that he and his first counsel and the other parties agreed upon the disputed items, which meant that there could be but one result of the reference, and that a judgment against him. Then it was that he sought other counsel to escape the force of his own agreement and of his own conduct. Good faith and fair dealing will not permit such a course, and this court will not sanction such a course of conduct.

V. In division the writer expressed no opinion as to the legal right of a probate court to appoint a referee in cases wherein a reference could be had in the circuit court. Our brother Woodson there expressed the idea that such power existed in the probate court. We still prefer to express no opinion as to a compulsory reference by a probate court, inasmuch as what we have said in preceding paragraphs determines the case. We can see where much can be said upon this question. Whilst it is true that the probate courts of this State are courts of statutory power, yet in the exercise of the powers granted, they resort to both common law and equitable rules in the disposition of matters before them. Taking of accounts have long since been recognized as matters in equity, yet under the law partnership estates which involve or may involve an accounting between partners are confided to the probate court, with full power to administer and settle. The statute allows offsets to claims to be filed and these may be such as involve long accounts or even an accounting, yet of these things either in individual or partnership estates the probate court has jurisdiction, and it may well be considered a substantial query as to whether or not in exercising the incidental powers required to determine the questions confided to the probate court by the law, it like other courts may not call to its aid the usual instrumentalities used by other courts in reaching conclusions upon the same class of investigations and in proper cases order a reference. But as said before, with the views we have upon the questions discussed, a decision of this point is not necessary, and we leave the question of the power of a probate court to order a reference without consent, to a case wherein such question is of more vital interest than in the one at bar.

For the reasons in other paragraphs of this opinion discussed, it follows that the judgment *nisi* should be affirmed and it is so ordered. *Burgess, Gantt* and

*Lamm, JJ.,* concur. *Woodson, J.,* concurs in separate opinion in which he reiterates his views expressed in Division to the effect that the probate court had the legal right, without consent of parties, to refer such a cause. *Valliant, C. J.,* dissents in opinion filed, in which *Fox, J.,* concurs.

## DISSENTING OPINION.

VALLIANT, C. J.—The first question in the case is a vital one, because it is a question of jurisdiction. The appointment of the referee was by agreement of all the parties in interest, at least all in interest so far as the record shows. The administration of an estate is an impersonal proceeding, a proceeding *in rem,* and it is not always that the administrator and distributees are the only parties in interest. But this proceeding to refer this cause to a referee for trial, with the stipulation that the probate court should confirm the report and render judgment in conformity thereto was with the express agreement of the parties to this record, including the only one who is now complaining of the action, and therefore if it is a case in which consent can confer jurisdiction, the jurisdiction was conferred. Jurisdiction of a person may be conferred by consent, but if the court has no jurisdiction of the subject agreement cannot confer it. [Davison v. Hough, 165 Mo. 561.] And although the court may have jurisdiction of the parties and jurisdiction of the subject yet its procedings to be valid must be judicial and to be judicial they must be in accordance with the procedure prescribed by law for that tribunal. This is the first case appearing in our reports in which a probate court has undertaken to appoint a referee and send a cause to him for trial of the issues; if the authority to do so should be sustained it would introduce an entirely new feature in our probate court proceedings. We have in our statutes provisions for the appointment of ref-

erees and the sending of causes to them for trial, their rulings and findings subject to the approval of the court. Without those statutory provisions there is no authority in any of our courts for the appointment of referees and the trial of causes before them. Doubtless our circuit courts which have also the jurisdiction of courts of chancery with their incidental necessary powers, could, if we had no such statutes, appoint commissioners in chancery to perform service of a similar character, but the power to appoint such commissioners was inherent in chancery jurisprudence alone and was not exercised by courts of law. The appointment of a referee and his authority as we know it in our practice, are of statutory authority and unless those statutory provisions apply to probate courts they have no jurisdiction to make such appointments or such disposition of causes before them. Section 691, Revised Statutes 1899, Mo. Ann. Stat., vol. 1, page 688, is: "An issue of fact in an action for the recovery of money only, or of specific real or personal property, must be tried by a jury, unless a jury trial be waived or a reference ordered as hereinafter provided." The next section is: "Every other issue must be tried by the court, which, however, may take the opinion of a jury upon any specific question of fact involved therein . . . or may refer it, as hereinafter provided." Thus we see that even in reference to a court of general jurisdiction the law imperatively says certain issues must be tried by a jury unless the jury is waived (and sections following prescribe how only a jury may be waived), or unless a reference as thereinafter prescribed is made, and if the jury be waived and a reference as in the statute authorized is not made there is but one mode of trial authorized, that is, the issue *must* be tried by the court. Then follow sections 697 and 698 prescribing under what conditions a reference may be ordered: the first is by consent of parties, the second where certain questions arise among which is the statement of a long

account. Our St. Louis Court of Appeals has held (Mangels v. Mangels, 6 Mo. App. 481) that a referee cannot be appointed by the circuit court to try a divorce case even by consent of parties, basing its conclusions chiefly on the language of the statute: "The circuit court shall have jurisdiction in all cases of divorce; and all such cases shall be tried by the court." [General Statutes 1865, 460, sec. 2; now R. S. 1899, sec. 2922, Mo. Ann. Stat., p. 1681.]

The law governing probate courts and directing their course of procedure is a chapter in itself and contains all the judicial power that the court is possessed of, except of course such powers as are necessarily inferred from the powers expressly given and necessary to the full execution of those express powers, and except also such powers as are expressly given in other statutes. Section 1765, Revised Statutes 1899, Mo. Ann. Stat., p. 1240, is: "Probate courts, in the exercise of their jurisdiction, shall be governed by the statutes in relation to administration, to guardians and curators of minors and persons of unsound mind, to apprentices and such laws as may be enacted defining and limiting the practice in said courts." That is an express declaration of legislative intent to confine such courts in exercising their jurisdiction to statutes relating to the subjects mentioned and statutes prescribing and limiting the practice in those courts. The chapter headed "Administration" contains all the powers except as elsewhere in the statutes expressly conferred that the probate court may exercise; it is a code of laws in itself. Many of the provisions in that chapter prescribed for the exercise of the jurisdiction of the probate courts would be entirely unnecessary if the provisions of the Code of Civil Procedure applied. But the Code of Civil Procedure does not apply to probate courts, it applies to circuit courts and courts of limited jurisdiction exercising within their limits the same kind of jurisdiction that circuit courts exercise, for

example, courts of common pleas and the like. Turning back to the chapter entitled Administration, we read in section 200, "The court shall hear and determine all demands in a summary way," etc. That is as mandatory as the language above quoted from sections in the Code of Civil Procedure where it is said the issues must be tried by the court. Again in section 223: "In all settlements of executors and administrators, the court shall settle the same," etc. Following section 220 are sections to the effect that in certain cases trial by jury may be had. But trial by the court and trial by the jury are the only modes of trial prescribed by the statutes relating to probate courts, and section 1765 forbids those courts to try causes in any other way than the way prescribed for them.

It is contended that probate courts exercise equity jurisdiction. That is not correct, when stated in that way. Probate courts have neither common law nor equity jurisdiction, yet in the deciding of a question within its peculiar province it often becomes necessary to apply the principles of common law or equity or both, and those courts do so; that power is necessary, they could not correctly decide such questions unless they had the right to apply those principles, but that is very different from exercising either common law or equity jurisdiction.

We have been furnished with very able briefs on both sides of this question, but the only express authority for the proposition that a probate court can refer a cause to a referee for trial is Rice's American Probate Law, page 265, based on a New York decision; but in New York they have, or at that time had, a statute expressly conferring such authority on the Surrogate. [N. Y. Code of Civil Procedure, Banks & Bros. (1888), sec. 2546.] Therefore that is no authority for the respondent's contention in this case.

Consent of parties cannot authorize a court to

227 Sup—7

render a judgment or make an order which it has no jurisdiction to render or make. Nor can consent authorize a court of limited jurisdiction to proceed in any other manner than that prescribed by law, if there is a manner prescribed by law.

The judgment in this case might be reversed on other grounds than the one above discussed, because this particular agreement of reference has some very peculiar features, among which are the mingling of the two estates in one, the provision that the referee should not only try the causes but that his report should be adopted by the probate court and its judgment should be in submission to the referee's finding and recommendation, and that whilst an appeal might be allowed yet the cause in the circuit court should not be tried *de novo,* as the law expressly requires, but only on the transcript of the proceedings sent up by the probate court, but I prefer to rest my conclusion on the more important proposition that a probate court has no jurisdiction to appoint a referee and authorize him to try the issues in a case properly before the court for trial and determination, and that consent of parties cannot confer such jurisdiction. *Fox, J.,* agrees with me in this opinion.

## DISSENTING OPINION.

WOODSON, J.—I dissent from the conclusions reached in the first paragraph of the majority opinion for the following reason:

It is elementary and conceded in the majority opinion in this cause that a court of chancery has the power to appoint a referee to hear the evidence and make a finding of the facts and report the same to the court.

In this State our circuit courts are the courts of chancery, and were it not for section 34 of article 6 of the Constitution of 1875, which deprives the circuit

In re Estate of Jarboe v. Jarboe.

courts of jurisdiction over probate matters and confers that jurisdiction upon the probate courts of the respective counties, the former would still have jurisdiction thereof by virtue of being courts of general jurisdiction.

That section gave to the probate courts just such jurisdiction and powers that it took from the circuit courts, no more, no less. It not only deprived the circuit court of jurisdiction over probate matters but also all powers and authority incident thereto, which included the power and authority to appoint a referee and conferred that same jurisdiction with its incidents upon the probate courts. If not, I would like for my brethren to point a finger to the section of the Constitution which reserves that power in the circuit courts and withholds it from the probate courts.

Under the constitutional provision cited this court has many times held that the jurisdiction of probate courts is original and exclusive over all matters pertaining to executors and administrators and all matters purely probate; and that while acting within their jurisdiction their power and authority is just as full and complete and their judgments are entitled to the same weight and exempt from collateral attack in the same degree as are those of any court of general jurisdiction. [Henry v. McKerlie, 78 Mo. 416, l. c. 429, 430; Johnson v. Beazley, 65 Mo. 250; State v. Daniels, 66 Mo. l. c. 205; McKenzie v. Donnell, 151 Mo. l. c. 450.] There are more than a hundred cases to the same effect decided by this court, which it would be useless to cite.

If said section 34 of the Constitution deprived the circuit courts of all jurisdiction over probate matters and conferred it upon the probate court, then I cannot see by what process of reasoning it can be logically maintained that such grant of power did not also carry with it all the incidental powers the circuit court possessed in the same class of cases.

I, therefore, dissent from the first paragraph and express no opinion as to the remaining one.

IN BANC:—I concur in all that has been written by Judge GRAVES in this case; and also reiterate the foregoing views expressed by me, written while the cause was in Division.