M. EISENSTADT JEWELRY COMPANY, Respondent, v. THE MISSISSIPPI VALLEY TRUST COMPANY, Executor of MARY A. MILLER, Deceased, Appellant.

St. Louis Court of Appeals, December 7, 1897.

**Equity:** NULLA BONA: BILL TO CHARGE PROPERTY OF ESTATE EMBARKED IN BUSINESS CONDUCTED BY TESTAMENTARY TRUSTEE. In a proceeding by bill in equity against the executor of an estate, upon a return of *nulla bona,* after execution issued under a judgment against the testamentary trustee for goods sold and delivered to him, to subject the property of the estate, embarked in a business conducted by such trustee, who was insolvent, to the payment of the judgment, where there was a cash balance in the hands of the executor, after the payment of legacies and all debts, and it did not appear from what source it was derived.—*Held:* That it was chargeable with the payment of plaintiff's debt.

*Appeal from the St. Louis City Circuit Court.*—HON. HORATIO D. WOOD, Judge.

AFFIRMED.

*Kehr & Tittmann* for appellant.

Respondent's claim is against Miller. He alone is responsible for the debt. Plaintiff was bound to look into Miller's authority, and must be held to a complete knowledge of all the limitations of the will, as well as those the law put thereon. *Smith v. Ayer*, 101 U. S. 320; *Wilson v. Hill*, 2 Beas. 143; *Shaw v. Spencer*, 100 Mass. 382; *App. First National Bank*, 7 Atl. Rep. 207.

The executor had the lawful right to refuse to carry on the business. *Wild v. Davenport*, 48 N. J. Law, 129; 1 Woerner on Adm., p. 283, sec. 123.

Under the provisions of Mrs. Miller's will, under no circumstances, even had the executor carried on the business, could anything more be charged with payment of debts due subsequent trade creditors than the effects already embarked in the business at the time of the testator's death. *Smith v. Ayer, supra; Brassfield v. French*, 59 Miss. 636; *Burrell v. Maudeville*, 2 How. (U. S.) 560; *Willis v. Shark*, 113 N. Y. 592; *Laible v. Ferry*, 32 N. Y. Eq. 791; *McNeilly v. Acton*, 4 De G. M. & G. 744.

Respondent must show that the particular property sought to be charged was part of the property used in the business. *Wilson v. Fridenberg*, 21 Fla. 386.

The money and profits turned over and distributed by Miller to the executor for the benefit of the legatees can not be reached by the creditor. *Jones v. Walker*, 103 U. S. 307. 444

*David Goldsmith* for respondent.

Plaintiff has an equitable lien or claim against the property of the estate of Mrs. Miller, embarked in the business conducted by Mr. Miller as the testamentary trustee. *Ex parte Garland*, 10 Ves. 110; *Fairland v. Percy*, L. R. 3 P. & D. 217; *Willis v. Sharp*, 113 N. Y. 592; 2 Bates on Part., sec. 600; *Brassfield v. French*, 59 Miss. 636; *Bank v. Tracy*, 77 Mo. 599; *Wild v. Davenport*, 48 N. J. Law 129; *Davis v. Christian*, 15 Gratt. 32, 33.

The profits earned in the business can certainly be subjected to the debts of the business. 2 Bates on Part., sec. 605.

BLAND, P. J.—The material averments in the petition are substantially the following:

That on November 25, 1893, Mary A. Miller, of St. Louis city, died testate, and that her last will was probated November 29, 1893, and letters testamentary were granted to The Mississippi Valley Trust Company. At the time of her death Mrs. Miller was conducting a business in a store known as Number 17 North Broadway; this business embraced a stock of jewelry and other merchandise and was the absolute property of the deceased at the time of her death. The contents of the store were inventoried as assets of Mrs. Miller's estate and were appraised at $11,854.94. By her last will she provided and directed "that said business should be continued after her death by Owen Miller, her husband, and that he should have charge of said business and as compensation for his services should receive sixty per cent of the net profits thereof, and that forty per cent of said profits should be paid

to her executors for the benefit of her estate. She
further directed that the business should be continued
by her husband until such time as the interests of her
children, her residuary legatees, should, in the judg-
ment of the probate court of the city of St. Louis,
demand the closing of said business and the sale of its
good will and the stock.'' On December 13, 1893, the
executor petitioned the probate court praying for an
order for the sale by it of the store and its assets and
good will. · The following day Owen Miller filed his
petition, averring his readiness and willingness to take
charge of the store and contents, and to continue the
business under the provisions of the will, and prayed
for an order on the executor to turn over the store and
goods to him. On December 16, 1893, both petitions
were heard in the probate court, and that of Miller was
sustained, and the store and contents ordered to be
turned over to him, on his executing a bond in the
sum of $25,000, with good security, and containing
certain conditions and stipulations. This bond was
given and approved, and Miller was put in possession
of the store and goods, and proceeded to continue the
business. In the conduct of the business Miller bought
of respondent the goods sued for, aggregating in value
$972.08; of this amount Miller paid $214.90, leaving a
balance of $757.18. It is claimed that these goods
were sold and delivered to Miller with the knowledge
and approval of appellant; that the prosecution of the
business by Owen Miller ceased on January 21, 1895,
and that the business had been profitable in the hands
of Miller, and that the executor had been paid from
the profits by Miller $1,298.75, and that Miller had
disposed of $10,400.35 worth of the original stock, and
paid that sum to the executor, and that he had re-de-
livered to the executor stock of the value of $1,464.59,
not disposed of, and had also delivered to the executor

a large portion of the articles which he had purchased from respondent; that all debts probated against the estate of Mary Miller, deceased, had been paid, and that appellant had a balance of $4,000 in money of the estate on hand, which it had not paid over to the legatees. The prayer was that the amount due respondent, $757.18, with interest, be adjudged a charge upon and a claim and demand against the estate of said Mary Miller, deceased, and that the executor be ordered to pay it.

The answer denied that the articles sold by respondent to Owen Miller were sold with appellant's knowledge or approval, and denied that it at any time before or after the sale informed respondent that it would be responsible for the payment of the goods; denied the delivery to it by Miller of any of said goods; alleged a want of knowledge or information as to whether the purchase of the goods by Miller was proper or necessary for the prosecution of the business. The answer further stated affirmatively that the business was turned over to Miller against the wish and protest of the executor, in obedience to an order of the probate court, and that from the date the goods were turned over to Miller until January 21, 1895, when the remnants of the store were turned over to it, the goods and the business was under the sole control and management of Owen Miller; that on October 16, 1894, appellant again filed a petition in the probate court of St. Louis city, praying that the court find that the interests of Mrs. Miller's children demanded that the business should be closed and the remaining stock be sold, which petition was denied by the probate court. No reply was filed.

The conditions of the bond given by Miller, by order of the probate court, are not such as to make

EQUITY: nulla bona: bill to charge property of estate embarked in business conducted by testamentary trustee.

that instrument available to the respondent for the recovery of the debt sued for, and need not be further noticed. The facts not admitted by the pleadings may be summarized as follows: The business conducted by Owen Miller proved a profitable one up to June 12, 1894, up to which date $1,298.75 in profits had been paid to the executor. After that date the business did not pay expenses, and it was after the latter date the purchases were made by Owen Miller of respondent. These purchases were charged on respondent's books to Owen Miller, trustee. A judgment was recovered by respondent on the account sued on in this case against Owen Miller, prior to the institution of this suit, and execution issued, which was returned *nulla bona*, and it is admitted that Owen Miller is insolvent.

Samuel Eisenstadt, the president of the respondent, testified that "he called upon Mr. Jones, the vice-president of that appellant, who, on inquiry about the advisability of crediting Miller, told him (Eisenstadt) that Mr. Miller is trustee of the estate and the St. Louis Trust Company was on his bond, and I don't see how you are running any chances with two large corporations like ourselves behind his back."

Mr. Jones testified that he had a conversation with Eisenstadt about Miller, but denied that he made the statement testified to by Eisenstadt, but that in answer to a question about the advisability of giving Miller credit for goods, he said that "he explained to Eisenstadt the will, the bond that was given, and referred him to the records of the probate court as to Mr. Miller's responsibility and liability and his connection with the estate of Mary Miller." Miller was required to make a weekly statement of his business to the St. Louis Trust Company, surety on his bond. About the

time the business was closed Miller sent by a porter a
sealed package to respondent containing a portion of
the goods which he had purchased from the respond-
ent; the seal of the package was not broken, and as
soon as respondent was informed of its contents it
notified Miller that it would not receive it. No part of
the proceeds from the sale of the goods from respond-
ent by Miller were ever paid over to the executor, nor
any of these goods taken possession of by it. Under
the terms of the will Owen Miller, by accepting the
provisions of his wife's will and by taking possession
of that part of her estate contained in the store, as to
such estate became a trustee, with power to continue
the business during the pleasure of the probate court
of St. Louis city, and the objections made by the
executor to his taking possession of the goods in
nowise changed his relation to the estate or to the
executor. What was done by him was done under
the will and by order of the probate court. The
executor was powerless to prevent this, and we are
unable to see how its protest could release that portion
of the estate of Mary Miller which came into the pos-
session of Owen Miller, from a liability regularly and
properly incurred in the due legitimate continuation
of the business by Owen Miller under the terms of the
will. It is in evidence that the purchase of the goods
from respondent by Miller was a necessary one to
replenish the stock and to keep up the business. The
authority given by the will to continue the business
indefinitely necessarily implied that authority was
given to make all purchases necessary to replenish the
stock, in order to keep up the business. On principle
the relation of Miller to the estate of his wife as to this
business can not be regarded as different, had the will
provided that the executor instead of Miller had been
directed and requested to continue the business, and

had continued as directed, in such a case the law is well settled that debts incurred in the continuation of the business will be a proper charge against all the estate embarked in the business or profits arising from it which could be followed and identified, such part of the estate and profits equity regards as pledged for the payment of the subsequent debts contracted in the regular course of the business and for its benefit. *Brassfield v. French,* 59 Miss. 632; *Burrell v. Manderville,* 2 How. 560; *Smith v. Ayer,* 101 U. S. 320; *Ex parte Garland,* 10 Ves. Jr. 110; *Bank v. Tracey,* 77 Mo. *loc. cit.* 599; 2 Bates on Partnership, sec. 605.

It is averred in the petition, and not denied by the answer, that Miller paid the executor $1,298.75 as profits derived from the business; that he paid $10,-400.35 arising from the sale of the goods in the store, and that he turned over to the executor goods of the value of $1,464.59, and that the executor has in his hands $4,000 in cash belonging to the estate, and that all debts have been paid and $16,000 in legacies.

There is no direct averment that the $4,000 in the hands of the executor was derived from the store. The part of the estate which produced this $4,000 is not stated, nor is there any evidence in regard to it. This is an equitable proceeding. The source or sources from which this $4,000 was derived was peculiarly within the knowledge of the appellant, and if it was not liable for the debt sued for because not derived from that part of the estate of which Miller had charge, it was the duty of the executor to have said so by its answer. Its silence on this point leads to the inference that the $4,000 is a part of the estate which had been in the hands of Miller. If so, as we have seen, it is chargeable with the payment of respondent's debt. The trial court so found, and we affirm its judgment. All concur.