L. B. HARMS, ADMINISTRATOR DE BONIS NON, APPELLANT, v. RICHARD POHLMANN ET AL., RESPONDENTS.*

Kansas City Court of Appeals.   June 6, 1927.

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, section 2853, p. 878, n. 82; Courts, 15CJ, section 427, p. 1015, n. 94; Evidence, 22CJ, section 1532, p. 1147, n. 77; Executors and Administrators, 23CJ, section 393, p. 1175, n. 53; 24CJ, section 463, p. 48, n. 92; section 475, p. 58, n. 67; section 2541, p. 1061, n. 60.

*Ira H. Lohman* and *Bohling & Bohling* for appellant.

*Irwin & Bushman* for respondent.

ARNOLD, J.—This controversy arose in the probate court of Cole county, Missouri, and involves the amount due the estate of Julius J. Beck, deceased, from the administrator thereof. From the probate court the cause was taken by appeal to the circuit court of said county, and from a judgment rendered therein plaintiff appeals to this court.

The undisputed facts of record are that Julius J. Beck died intestate at Jefferson City, Mo., on January 4, 1923, and left surviving him his widow, Alma Beck, and two children aged four and two years respectively. R. A. Pohlmann, one of the defendants herein was appointed administrator of the estate on January 8, 1923. He qualified under said appointment giving an approved bond with D. M. Oberman and Martin Pohlmann as sureties thereon. The record discloses that Julius J. Beck had been in the general merchandising business at Jefferson City for a number of years, his stock consisting of groceries, hardware, general farm implements and suitable fixtures and appliances for vending the same. An inventory and appraisal made and filed in due time in the probate court showed the following assets:

```
Real Estate:
    Lot No. 78 Woodcrest................$  100.00
    34 — 9x123  60x208-9  Part in lots 706
        and 707........................ 7,000.00   $7,100.00
Cash, notes, bonds, etc.:
    Cash on hand........................   881.39
    Outstanding accounts................ 3,246.78    4,128.17
Other personal property:
    Merchandise inventory as per typewrit-
        ten sheets attached.............12,033.40   12,033.40
                                                   _____
    Grand total of inventory and appraisement ....$23,261.57
```

On January 17, 1923, the administrator filed in the probate court a petition to sell the personal property, as follows;

"Now comes your petitioner and respectfully states to the court that he has had a careful inventory and appraisement made of the Estate of Julius J. Beck and that he finds that there is owing by said estate far more than there is money on hand to pay the debts owing by said estate aforesaid.

"Your petitioner further states that there is a stock of goods, consisting of goods, wares and merchandise, belonging to said estate and situate at 504 Madison street, Jefferson City, Missouri. Your petitioner therefore respectfully asks the court that an order be made by your honorable body allowing your petitioner to sell said stock of goods, wares and merchandise aforesaid by public sale for the purpose of paying off all debts owing by the estate of said Julius J. Beck. Some of said goods, wares and merchandise aforesaid are perishable and it will be a loss to said estate unless said order of sale is made at once.

"Respectfully submitted,

"R. A. POHLMANN,

"Administrator of Estate of Julius J. Beck, deceased."

"Dated January 17, 1923.
"SEAL.
"Approved Jan. 17th, 1923,
"JOHN E. GARMAN
"Probate Judge of Cole County, Mo."

Upon approval of this order by the probate court, the administrator sought the advice of decedent's widow, guardian of the two minor children, and other members of the family, including the father of decedent. This interview took place in the office of the probate court and it was there decided to reopen the store and conduct it as a going concern. It is in evidence that some of the goods in stock were old, out of date and practically unsalable and it was believed that by the purchase of some new stock to offer for sale with the old, better results could be obtained for the estate. The administrator testified that the widow and guardian agreed to this arrangement. The witness also testified that on several occasions the matter was taken up with the probate court, but there is no showing that any specific order was made by the court directing that the store be opened and continued as a going concern, nor is there any showing that the court objected to such plan. The administrator also testified that he considered the question of selling the stock in bulk, and that he offered it to several persons but could get no offer in that form and it was then decided to open the store and conduct it as a going concern.

It appears that when it was determined to open the store the administrator retained the organization of clerks who were there before the death of decedent, including Paul Beck, brother of decedent, who had full charge of the money and made up the cash about three times per week and it was deposited by the administrator. The wife of Paul

Beck helped in the store on Saturdays and at other times. The goods were offered for sale and the business conducted generally as a going concern; new stock was bought and they "tried to wind it up on a paying basis." Either Paul or Oscar Beck, brothers of decedent, did the buying and all money received was deposited in the bank. The administrator was not at the store at all times but would come down each day and stay an hour or so; he was employed by the State at the time at the penitentiary; he went to St. Louis for a time and the store was run in his absence; the administrator kept the daily cash book showing all receipts and disbursements. The testimony tends to show that the various items entered in detail on the pages of the cash book correspond in all essential particulars with the "first and final settlement" filed in the probate court.

It appears of record that under authority of the order of the probate court, entered of record on January 17, 1923, and the agreement with decedent's widow, the guardian of the minor children above referred to, the administrator began operation of the store as a going business on January 11, 1923, and continued until November 3, 1923, at which time such operation was discontinued. Thereafter, on February 15, 1924, one L. B. Harms who, in the meantime, had intermarried with the widow of decedent, was appointed administrator de bonis non of the estate of Julius J. Beck, deceased, vice R. A. Pohlmann, removed. The order of removal was made upon the application of Alma Beck, as widow, and as guardian and curator of the minor children of Julius J. Beck, charging that R. A. Pohlmann, administrator, had failed to discharge his duties, mismanaged said estate and failed to make settlement thereof. The order of the court revoked the letters of administration of said Pohlmann and suspended the same pending final settlement. Said Pohlmann appeared in person in open court and waived the issuance of citation and process in connection therewith; and on order of the court forthwith delivered possession of the property to the administrator de bonis non; and thereupon said Pohlmann filed his first and final settlement, consisting of many pages showing in detail the various transactions during the life of the administration of the estate, all of which it is unnecessary to set out here.

Exceptions to said settlement were duly filed by the administrator de bonis non, asking that the court ascertain the amount of money remaining in the hands of said Pohlmann, or came into his hands as administrator and remaining unaccounted for. The probate court sustained the exceptions to the settlement, in part, and disallowed them in part. Plaintiff appealed from this finding to the circuit court of Cole county where the cause was tried to the court, resulting in a finding and judgment that, at the time of the revocation of the letters of the said Richard A. Pohlmann, there remained in his hands the sum of $1396.73, belonging to the estate of Julius J. Beck, and that

said Pohlmann should be surcharged with said amount and said sum be paid to the estate. The court further found that as to other debts and credits, the said settlement was correct and should be approved. The judgment rendered ran against R. A. Pohlmann, administrator, and D. M. Oberman and Martin Pohlmann, securities.

Not being satisfied with the amount of the judgment, plaintiff filed motion for a new trial and on the overruling thereof, brought the case here by appeal.

In his assignments of error plaintiff charges (1) the court erred in failing to charge the administrator with the difference between the assets of the estate inventoried and turned over to him and the demands and expenses of the administration paid in due course of law; (2) in holding that the administrator had authority to continue the business of deceased; (3) in admitting evidence contradicting the records of the probate court, and (4) that the judgment is inadequate under the law and the evidence.

As to the first of these charges it needs only be said that it involves the question of the weight of the evidence, a matter wholly within the province of the trial court sitting as a jury. The second point involves the construction of the order of the probate court wherein it is said:

"And the court having read the petition, heard the evidence, and being fully advised in the premises and being satisfied that it would be for the best interest and not prejudicial to persons interested in said estate, it is ordered by the court that Richard A. Pohlman, said administrator, be and he is hereby authorized and empowered to sell at private or public sale the goods, wares and merchandise aforesaid and make report of said sale to this court."

It is argued that this order may not properly be construed as authorizing or permitting the administrator to engage in the retail business as was done in the case at bar. It is insisted that the order failed to prescribe the terms of a private sale and therefore was void; that an order authorizing and empowering the administrator to "sell at public or private sale the goods, wares and merchandise" and to "make report of said sale to the court," by its terms is insufficient to vest authority in the administrator to engage in and continue the retail business of deceased. Many citations are offered in support of this argument which do not apply to the facts here presented. The record shows that the question of continuing the business was taken up with the probate court as well as with the parties interested, and it was agreed that the best interests of the estate could be served by the operation of the business; and that while the probate court did not make a formal order to that effect, it did acquiesce in the plan, as shown by the evidence. If the formal order had been the only authority under which the administrator and the interested parties acted, plaintiff's contention might have some weight. It is not disputed that the probate court is the proper authority to settle all mat-

ters pertaining to a decedent's estate, and that it may exercise power of an equitable nature and employ equitable principles in respect thereto. This was the ruling in State ex rel. v. Shackelford, 263 Mo. 52, 172 S. W. 347, and cases there cited. In the case of Jarboe v. Jarboe, 227 Mo. 59, 93, 127 S. W. 26, the court said:

"Whilst it is true that the probate courts of this State are courts of statutory power, yet in the exercise of the powers granted, they resort to both common law and equitable rules in the disposition of matters before them."

It must be admitted that probate courts are specifically vested with jurisdiction to do certain things in connection with estates and it follows they should be permitted to invoke equitable rules and principles in adjudicating any and all issues which the law confides to their care. [Lietman v. Lietman, 149 Mo. 112, 50 S. W. 307.] Section 104, Revised Statutes 1919, authorizes the probate court at any time to make such orders as may be required for the speedy collection of debts or the sale and distribution of personal property of an estate. The order of that court is the controlling authority in such matters. [Orchard v. Store Co., 225 Mo. 414, 471, 125 S. W. 486.] It was held in Estate v. Schnecko, 73 Mo. App. 612, that a probate court, in the exercise of exclusive jurisdiction in the management of estates, has the authority and jurisdiction to ratify the acts of the administrator in the adjustment of business in connection therewith.

As to executors and administrators, it has been held they stand in the situation of trustees for those interested in the estates they administer and in the management thereof, they are generally liable only for want of due care. [Lewis v. Carson, 16 Mo. App. 342; Hill v. Evans, 114 Mo. App. 715, 722, 91 S. W. 1022; State ex rel. v. Dickson, 213 Mo. 66, 99, 111 S. W. 817.] The case last named is directly in point and determines this issue against plaintiff's contention. The court held the sale of personal property by the administrator, upon the direction and request of adult distributees, or one who had authority to represent them, without an order of the probate court, bars them from recovery on the administrator's bond for any mismanagement of the estate. The administrator had the right to rely upon their approval of the sale, and to them it makes no difference whether he got an order of the probate court to sell or not.

In the case at bar there is evidence that the method of selling the stock in the manner adopted by the administration was not only acquiesced in by the widow who was also guardian and curator of the minor children in interest, but that it was acquiesced in, if not actually approved by the probate court. In such situation, we see nothing erroneous in the action of the trial court in holding defendant was authorized to continue the business at retail, and the fact that the sale was made in that manner is not conclusive as to whether or not the administrator exercised due care. As is said in the Dickson case,

supra (l. c. 100), "notwithstanding he acted without authority, if they (minor or non-acquiescing adult distributees) suffered no damage, they cannot complain." We find substantial evidence in the record before us that the administrator acted with due care in the management of the estate. The court so found and we are not authorized to disturb that finding.

The only remaining point in the controversy is the charge that the court erred in admitting evidence tending to contradict the records of said probate court. This charge refers to the testimony of defendant Pohlman that the final settlement was true and correct with the exception of two items of $250 which he failed to turn back, and a deduction of twenty-five per cent on the other property. We think the trial court was right in treating such evidence not as contradicting the records of the probate court but rather in explanation thereof, or supplemental thereto, and therefore admissible.

The above covers plaintiff's contention that the judgment is inadequate under the law and the evidence, both as to commissions and waste of the estate, and that it is therefore erroneous. The trial court, sitting as a jury, heard the evidence, weighed it, rendered judgment thereon, and we must regard the finding in the light of a verdict of a jury which we are not authorized to disturb. The judgment is affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.