This cause is here for review upon appeal from an interlocutory order of the circuit court of Polk County.
Only two questions are presented for review: First, The order granting the motion of defendant, Commonwealth Life Insurance Company, to open and set aside a decree pro confesso entered against it; and Second, the overruling of complainant's exceptions to the fourth and seventh paragraphs of the answer of the defendant, Commonwealth Life Insurance Company.
The transcript shows that the bill of complaint was filed October 29, 1928; that process was served upon Commonwealth Life Insurance Company on November 21, 1928, pursuant to which appearance was duly entered December 3, 1928; that a decree pro confesso was entered against said company on January 29, 1929, for failure to plead at the January rules; that on February 7, 1929, appellee company filed its motion to set aside the decree pro confesso and therewith tendering a proposed answer supported by affidavit, which motion was heard February 12, 1929, and pending a decision thereon, a trial term of the circuit court intervened, and the order was not entered until May 14, 1929, setting aside said decree pro confesso and permitting the filing of the answer so tendered; that exceptions to paragraphs 4 and 7 of said answer were filed May 22, 1929, and overruled by the court July 30, 1929.
Reverting first to the question presented by the action of the trial court in setting aside the decree pro confesso, it appears that it had been entered seven days when the *Page 691 
motion was made to set it aside. The defendant having filed its motion within twenty days of the entry of the decree pro confesso, the said order had not become absolute under the rules and statutes; Equity Rule 45; Section 4939 and 4945, Compiled General Laws of Florida, 1927. The fact that the order on the motion was not made and entered within twenty days due to no fault of the defendant could not adversely affect defendant's rights.
In the case of Johnson v. Johnson, 91 Fla. 275, 107 So. 342, it was held that
 "The setting aside of a decree pro confesso on motion or petition before the same becomes absolute should be distinguished from vacating or setting aside the final decree rendered upon the bill so taken as confessed, as provided for in Section 3158 of Rev. Gen. Stats. of 1920, (Now Section 4945, Compiled General Laws of Florida, 1927), although many of the rules applicable to the one are applicable to the other. 21 C. J. 793."
It was also there held that the court's discretion in granting or refusing a motion to set aside a decree pro confesso will not be disturbed or reversed by this Court unless gross abuse of such discretion is made to appear. See also Strickland v. Jewell, 80 Fla. 221, 85 So. 670. As a matter of fact, an interlocutory order in a suit remains within the control of the chancellor until the entry of final decree, in the absence of intervening and effective appellate jurisdiction. Mitchell v. Mason, 90 Fla. 201, 106 So. 430; Johnson v. Johnson, supra; 21 C.J. 793. However, to entitle a defendant to an order of the court opening a final decree, he must show not only reasonable diligence, but a meritorious defense, which should be in the form of a proposed answer and exhibited to *Page 692 
the court at the time of making the application. People's Realty Co. v. Southern Colonization Co., 78 Fla. 628, 83 So. 527; Clarke v. Knight, 86 Fla. 491, 98 So. 358; Sutton v. Zewadski, 70 Fla. 379, 70 So. 433; Strickland v. Jewell, supra.
As to the question whether or not the answer presented a meritorious defense, it appears that it was tested later by the exceptions filed by complainant to paragraphs four, five and seven of the proposed answer, and to adjudicate their merits necessarily determines the question as to the correctness of the order overruling exceptions of complainant to grounds four and seven of the said answer.
The purpose of the bill of complaint is to set aside a subrogation agreement executed by the executor whereby the first mortgage executed by Pipkin and wife to decedent is subrogated to a second mortgage executed by them to the Commonwealth Life Insurance Company.
The bill alleges that D. P. Pipkin and Wife executed as a part of the purchase price of lots 7 and 8 Block 17 of West Lakeland, a mortgage to Eppes Tucker, Sr., to cover the two named lots for $74,000.00. The mortgagee died March 1, 1926, and McKindree Tucker, one of the heirs also one of the defendants in this suit, was named executor of his father's estate in the will and he duly qualified and was acting when this suit was brought. It appears that the north 48 feet of Lot 8 was released from the terms of the mortgage on October 7, 1926, to which no point appears to be raised on this appeal.
On October 29, 1927, defendants, D. M. Pipkin and wife executed a second mortgage for $12,500.00 covering said Lots 7 and 8, less the north 48 feet of lot 8, to the Commonwealth Life Insurance Company, which mortgage *Page 693 
was duly recorded on November 3, 1927; that on November 2, 1927, McKindree Tucker, executor of the estate, executed and delivered to said company a subrogation agreement the terms of which provided that the first mortgage held by the Tucker Estate would be subrogated to the mortgage held by the said insurance company which was recorded November 7, 1927; that at the time of the execution of said second mortgage by the said mortgagors, there was due to the Tucker Estate on their first mortgage about $35,000.00, and that at the time of bringing this suit there was due the estate about $21,000.00. The first mortgage had therefore been reduced from seventy-four thousand to Twenty-one thousand dollars.
The bill alleges that said subrogation agreement is void, as the executor was without authority under the will to execute said agreement; that the security under the first mortgage was thereby greatly impaired past due and unpaid; that as foreclosure of the first mortgage will be subject to the pretended lien of the said second mortgage complainant will be thereby greatly injured in her rights as an heir to her 1/6 share under the will.
While the point is not raised, it appears that the contract is signed by "M. Tucker, (Seal) Executor of Estate of Eppes Tucker, Sr.," and not as Executor, etc. Under such condition the executor would be personally liable in the event of waste, fraud or bad faith, even though the will or the statutes conferred authority to make such a contract. See Higgins v. Driggs, 21 Fla. 103; Clonts v. Cline, ___ Fla. ___,131 So. 321; Branch v. Branch, 6 Fla. 314.
Grounds 4 and 7 of the answer of said insurance company allege in substance that no money was transferred *Page 694 
under its second mortgage until after the execution of the subrogation agreement, when it paid out the following sums for the purposes and to the parties named:
 "To J. E. Melton, for fire and tornado insurance on the property described in both mortgages, the sum of $101.36
 To the City of Lakeland for taxes and assessments on said property $1350.69
 To McKendree Tucker, as Executor of the Estate of Eppes Tucker $10,232.82
 For State and County taxes on the property described in both mortgages the sum of 336.13
 "The balance to make up the sum of $12,500.00 was disbursed to pay the cost of making said loan, including commissions, attorney's fee and life insurance premiums on life insurance carried for the benefit and for the security of said mortgage.
 "This Defendant further says that at the time it furnished the money on the mortgage which it took, taxes on the property described therein were delinquent, and the said D. M. Pipkin, and his wife, Sarah C. Pipkin, were unable to pay the same and the said Pipkin and wife had no funds with which to pay any of the interest or principal due upon the mortgage belonging to the said estate, and that these facts were well known to the Executor of the said Estate, and it is well known to the said Executor and to the said Pipkin and wife that the sole inducement for the acceptance of the Mortgage made by Pipkin and wife to this defendant was the execution and delivery of the subordination agreement by the said executor and that it was well known to all the parties to said transaction including the said Pipkin and wife, the said McKendree Tucker and this Defendant, that the Mortgage made to this Defendant was in reality made for *Page 695 
the benefit of the Estate of Eppes Tucker, Sr., deceased, and that all of the proceeds of said mortgage loan were paid over to the said executor or expended for the benefit of the property described in said mortgage as set out above, with the exception of the amounts necessarily paid out in commissions, attorney's fees and recording fees to cover the expense of handling the said mortgage."
Decedent's will provides that the executor shall collect all claims and dues to the estate and shall have power and authority to sell all real estate of which deceased was possessed at either private or public sale after thirty days' notice and to execute deeds thereto as executor, also provides for the disposition of the proceeds of the sales of all property. There is no express provision in the will authorizing the executor to execute a subrogation agreement or mortgage or to make compromises or agreements in settlement of mortgages held by the estate. The appellee contends that the executor had the right to use his best judgment in collecting and protecting the first mortgage by the use of the funds arising from the second mortgage and that paragraph 7 of the answer shows that it was to that purpose the proceeds of the second mortgage were applied.
If it is a fact as alleged that a portion of the proceeds were applied to the purpose of protecting the property covered by the first mortgage and the remainder to reduce the original mortgage or to make it more secure to the estate, the subrogation contract may not be defective to the point of voiding the subrogation agreement even though the executor is conceded to have exceeded his lawful authority under the will and the law of this State governing such matters.
 "At common law the executor and administrator, *Page 696 
having an absolute power of disposal over the whole of the personal effects of a decedent, had authority to compromise or accept any composition or otherwise settle any debt, claim, or thing whatsoever in regard thereto. And he still has such powers in this connection that his compromise of a claim against the estate will be upheld if it is fair, beneficial to the estate, and free from fraud, negligence, or misconduct. The same is true as to claims belonging to the estate. Since an executor or administrator has the full legal title to all chooses in action due the estate of the decedent, he may, in the absence of fraud or collusion, release, compromise, or discharge them as fully as if he were the absolute owner, being answerable only for any improvidence in the exercise of the power." 11 R.C.L. 202, Sec. 225.
In this connection, it will be observed that Section 5624, paragraph 2, Compiled General Laws of Florida, 1927, provides a statutory method for handling claims due the estate which may be uncollectible by suit; and it will be observed that Section 5613, Compiled General Laws of Florida, 1927 (Chapter 8473, Sec. 1. Acts of 1921), provides that upon order of the court a compromise or settlement of any claim by or against an estate may be made upon petition of the executor setting forth the facts as to such claim, verified by oath, when the court is satisfied that it is for the best interests of the estate of the decedent, and that such statute shall operate to relieve the executor of all personal liability for making such compromise. The provisions of this statute should be complied with; otherwise an executor may be subjected to personal liability for any injury to the estate in case of waste, mistake or bad faith.
The above statutes seem not to vary materially from *Page 697 
the general rule that as an incident to the power to sue and collect, the administrator has the right to compromise any demand of decedent provided he acts honestly and within the range of reasonable discretion for the true interest of the estate. 23 C.J. 1198, Sec. 451. But where statutes so provide as above and the executor acts without the sanction of the court, the burden is upon him if interested parties object to show that he has acted judiciously and for the best interests of the estate. 23 C.J. 1199-1203, Secs. 452-461; Carr v. Illinois Cent. R. Co., 180 Ala. 159, 60 So. 277, 43 L.R.A. (N.S.) 634; 11 R.C.L. 202. In this case the answer undertakes to show executor has caused no waste and has acted in good faith to protect the property against forced sale for taxes; also to provide ample insurance to further secure the debt.
It has been held in this State (Wilson v. Fridenberg, 21 Fla. 386) that an order of the circuit court on petition presented by an executor for authority to mortgage assets of the estate to secure debts incurred by the executor, is void as to all parties interested in said estate who are not parties thereto and is inoperative to authorize the executor to so mortgage property when not authorized by the will; also held that
 "When one makes a voluntary payment of a debt or charge he cannot be subrogated to the rights of the original creditor."
The court further said however:
 "In this case no such equitable right exists in favor of (complainants) executors, for the reason that the executors have wasted the assets of the estate and have no right to reimbursement from the estate."
The instant case differs in that there was a subrogation agreement, and no specific waste of assets or *Page 698 
fraud is alleged. Pipkin and wife had the legal right to make a second mortgage on the property to which they had title, and the fourth and seventh grounds of the answer allege in substance that a part of the proceeds derived from the second mortgage was used to pay off certain emergency encumbrances, such as taxes, etc., and that the remainder was applied to further securing the first mortgage.
While an executor is unauthorized to mortgage the property of the estate, or make a new contract to charge the estate (May v. May, 7 Fla. 207) even to liquidate its debts, yet where no waste or fraud is shown, the estate may be bound in equity to repay the amount advanced with interest. See 24 C.J. 196, Sec. 702; Thomas v. Provident Life, etc., Co., 138 Fed. 348, 70 C.C.A. 488 (Certiorari denied 200 U.S. 618, 26 S.Ct. 755, 50 L.Ed. 622).
This Court will take judicial knowledge of the deflated values of real property during the transactions here in question. The appellant does not claim that the property was worth the amount of the residue of the first mortgage or that it was worth more than the one made to the said insurance company. While any increase in the value of real estate would benefit the first mortgage, a further decrease could not reduce the amount the executor obtained by the subrogation, which was applied to purposes which are not alleged to be a result of bad faith, fraud, or bad judgment. So far as the bill and answer show to the contrary, the estate of the deceased still remains the beneficiary of the subrogation which the complainant is seeking to have set aside, of which transaction complainant is the beneficiary to the extent of one-sixth interest. *Page 699 
The general rule seems to be that
 "An actor in a court of equity comes into a court of conscience, and will not be allowed unconscionable relief, otherwise than under conditions that he does equity upon his part. This rule will aid a defendant, even if he could not have secured equitable relief, had he been the actor." Knott v. Smith, 79 Fla. 628, 84 So. 660; Tampa Jacksonville Ry. Co. vs. Catts, 79 Fla. 235, 85 So. 364.
It appears to the Court that under the circumstances of the pleadings in this case, the trial court committed no error in overruling the exceptions of the complainant to the fourth and seventh grounds of the answer of the defendant, Commonwealth Life Insurance Company.
Affirmed.