No. 19,437.

IN THE MATTER OF THE ESTATE OF DONALD B. SMITH, DECEASED, THE UNITED STATES OF AMERICA v. MARVEL L. SMITH, ADMINISTRATRIX.

(359 P. [2d] 1020)

Decided February 6, 1961.   Rehearing denied February 27, 1961.

Mr. DONALD G. BROTZMAN, United States Attorney for the District of Colorado, Mr. CHARLES M. STODDARD, Assistant, for plaintiff in error.

Mr. STANLEY W. PRISNER, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

WE will refer to plaintiff in error as U. S. and to defendant in error as Mrs. Smith.

Donald B. Smith died intestate August 16, 1954, and Mrs. Smith, the surviving widow, was appointed administratrix, August 18, 1954. The principal assets of the estate were those tangible and intangible properties connected with a roofing business which decedent had operated under the name of "Dunrite Roofing Company." At the time of decedent's death the fiscal affairs of this business were in a chaotic state. At various times prior to the death of Mr. Smith the business had been con-

ducted at a substantial profit, but upon his death there were numerous claims against the estate, some of which were unsecured and others were secured. The latter represented such a considerable portion of the total obligations that it was doubtful whether much would be available for the payment of claims of general creditors. The inventory filed by Mrs. Smith showed a gross value of assets in the amount of $42,379.61. Mrs. Smith was familiar with the business carried on by her husband during his lifetime. She applied to the probate court for authority to continue the operation of the business for a reasonable time to assist in liquidating it and ultimately closing the estate. The court approved, and no question is raised concerning the propriety of that order.

Mrs. Smith soon discovered that she could not continue the business without quickly acquiring some working capital. Under existing conditions it would have been impossible to secure it from the banks or other loaning agencies. Having received some substantial money from insurance payable to her following her husband's death, she petitioned the court to permit her, as administratrix, to borrow for the estate the sum of $10,000.00 from herself individually. No notice of this application to borrow money was given to any person interested in the estate. The court authorized Mrs. Smith to make the loan, and on October 8, 1954, as administratrix she executed a note payable to herself individually for the sum of $10,000.00 with interest at the rate of 6% per annum. The $10,000.00 thus made available to the estate was placed in the business and for a time it appeared that some success was being achieved through her efforts to restore solvency to the operation. She discovered, however, that moneys had been received by the decedent in part payment for jobs which had not been started, and for which no materials had been secured. Finally the inevitable happened, the business collapsed and the estate wound up with insufficient assets to pay creditors, notwithstanding the $10,000.00

loaned by Mrs. Smith went into the business. In the meantime U. S. filed claims for taxes, for unpaid with-holding taxes related to Social Security accounts of employees, and for damages for an alleged faulty or incomplete roofing job done by decedent at Lowry Air Force base in Denver.

Mrs. Smith claimed reimbursement for the moneys advanced by her, with interest at 6%, as an expense of administration, which, if allowed, would give her a preferred status as a creditor of the second class under pertinent statutes. U. S. objected to this classification. Following hearings to the court, in which considerable evidence was taken, the claim of Mrs. Smith was allowed as a claim of the second class and judgment entered accordingly. U. S. seeks review of that judgment by writ of error.

As grounds for reversal it is argued that the court order authorizing the loan was void in that no notice was given as required by C.R.S. 1953, 152-10-34; that under the statute the only loan authorized is a short period loan for the purpose of liquidation, and that Mrs. Smith cannot claim a preferred status as a second class claimant because she continued to operate the business for a period in excess of a reasonable time, and for the purpose of speculating with the assets of the estate. The statute referred to provides, inter alia:

"If it shall appear to the court that the decedent was engaged * * * in any other business, and that it is to the best interests of the estate that such be continued for a reasonable time, to provide for a better opportunity of liquidation, the court may order such business continued * * * and if, in the continuation of such business, it is necessary for the personal representative to borrow money to continue such operations, the court may, upon notice to all persons in interest, order such borrowing."

The trial court entered findings which included the following:

"That the financial structure of Dunrite Roofing Co.

was in jeopardy at the time of death, the decedent apparently having drained off funds from said business to the extent that there was no working capital and yet the firm had approximately six months' work which it had committed itself to do.

"That the evidence presented at the instant hearing clearly shows the circumstances under which the $10,000.00 loan was authorized and made, to-wit: that on October 8, 1954, the estate was in need of immediate capital to endeavor to protect all of the parties involved.

"That it was to the best interest of the estate and all parties concerned that the business, Dunrite Roofing Co., be conducted by the administratrix after the death of the decedent, Donald B. Smith, and that the order to continue said business was properly entered and made.

"That it was to the best interest of the estate that the sum of $10,000.00 be borrowed, as it was, by the administratrix.

"That the same evidence as has been presented to the Court in this hearing, concerning the need for the $10,000.00 loan, must have been available to the visiting Judge, who, on October 8, 1954, authorized the loan of $10,000.00."

The Conclusions of Law made by the trial court were as follows:

"1. That the classification of this type of claim, namely, a loan to a fiduciary for the continuation of a business, of necessity has to be determined upon the existence of facts at the time the loan was authorized and made; that any events occurring subsequently to the date of said authorization and loan do not change the classification of the claim according to the facts which did exist at the date of the authorization of the loan and the making of the same.

"2. That the claim of Marvel L. Smith should be allowed and classified as a cost of administration in the sum of $10,000 plus interest from the 8th day of Octo-

ber, 1954, and that the same be a claim of the second class."

The findings of fact entered by the trial court have ample support in the evidence. We agree with the conclusions of law as stated by the trial court. It should be borne in mind that this is not a proceeding in which a claimant against an estate seeks to surcharge an administratrix for failure to function properly in her fiduciary capacity. The case of *Gordon-Tiger Mining and Reduction Company v. Loomer,* 50 Colo. 409, 115 Pac. 717, which is relied on by U. S., is clearly distinguishable upon the facts.

In *Canaday v. Kauffman,* 140 Colo. 165, 342 P. (2d) 1027, the controversy was between certain heirs and the fiduciary. The administratrix had borrowed money without notice to the heirs, and paid off the loan, and in the final report had reimbursed herself for the amount paid on that loan. In that case it was said:

" * * * We are confronted with the question as to whether under the facts present in this case the administratrix is equitably entitled to be reimbursed for the money borrowed and used in running the ranch. In the opinion of the trial court she was entitled to be reimbursed. We cannot say from the record before us that the conclusion of the court was unjust or unlawful and, accordingly, it is upheld."

Under the constitutional grant of power to the county court, even without the intervention of the statute, the court had discretionary power to direct the administratrix to continue operation of the business of the deceased, and if it were found necessary to secure working capital to carry on the business during a reasonable period for administration, the court could authorize a loan, without the aid of the statute. As in the case at bar the need for working capital was found to be urgent. At the time the loan was authorized the U. S. had not appeared in the estate as a creditor by the filing of any claim. To require a court to wait until the expiration

of the time within which a creditor might file a claim in an estate matter before the personal representative could be authorized to borrow money, under the circumstances here disclosed, would completely destroy a benefit which might possibly accrue to the estate by the making of the loan. The provision of the statute calling for a notice "to all persons in interest," even assuming that creditors who have not yet filed claims are such "persons in interest" (which we definitely do not decide) is directory only and not jurisdictional. The order authorizing the making of the loan was not a void order; at most it was voidable only. Its character as a second class claim was fixed at that time and the attack thereafter made upon it is a collateral attack which cannot be sustained. *Glenn v. Mitchell,* 71 Colo. 394, 207 Pac. 84; *Kavanagh v. Hamilton,* 53 Colo. 157, 125 Pac. 512; *Klancher v. Anderson,* 113 Colo. 478, 158 P. (2d) 923.

█ For approximately three years an effort was made to continue the business in the best interest of the estate. The private funds of Mrs. Smith went into it. The fact that the effort made was not successful in restoring solvency to the estate is not controlling in the absence of fraudulent conduct.

It is to be noted that during all the time the business was being carried on by Mrs. Smith the creditors of the estate had full knowledge of the fact that she had advanced $10,000.00 of her own funds for that purpose. They apparently were very willing that she should make the effort and use her funds as a possible benefit to their position as creditors. The record does not disclose that they made any complaint during the time the estate carried on.

Perceiving no error in the record, the judgment is affirmed.

MR. JUSTICE SUTTON and MR. JUSTICE McWILLIAMS did not participate.