In the Matter of the ESTATE of Howard R. TORREYSON, Deceased.

**FIRST NATIONAL BANK OF MEXICO, Missouri, Objector-Respondent,**

v.

**Robert J. AHSENS, Successor Administrator, d. b. n., w. w. a., Appellant.**

**No. 33292.**

St. Louis Court of Appeals.

Missouri.

April 15, 1969.

Motion for Rehearing or to Transfer to the Supreme Court Denied May 28, 1969.

Application for Transfer Denied July 14, 1969.

Welliver, Porter & Cleaveland, David C. Wood, G. Bernard Esser, III, Columbia, for appellant.

Barnes & Barnes, Mexico, for objector-respondent.

DOERNER, Commissioner.

This case originated in the Probate Court of Audrain County upon the objection of the First National Bank of Mexico, Missouri, to the final settlement and petition for distribution filed by Robert J. Ahsens, Successor Administrator De Bonis Non, With Will Annexed, of the Estate of Howard R. Torreyson, Deceased. In brief, the Bank objected on the ground that the final settlement and petition for distribution failed to make any provision for the repayment to the Bank of money borrowed by the original Administrator for the continuation of the decedent's business. The Probate Court ruled that the loans were unauthorized and overruled the Bank's objections. On the latter's appeal the Circuit Court held that the loans were valid obligations of the estate, and directed that they be paid, on a pro rata basis along with other debts and expenses of administration.

By his appeal the Successor Administrator seeks our reversal of that judgment.

Most of the facts are contained in a stipulation filed in the Probate Court and are therefore undisputed. For some unstated period prior to his death the decedent had engaged in the florist and greenhouse business in Mexico under the name of C. C. Wonneman and Sons. The business was losing money, and during his lifetime the decedent made periodic loans for use in the conduct of his business. Torreyson died testate on July 26, 1963, having made a short will which provided that all of his estate, after the payment of debts and expenses, was to go to his wife, Elizabeth T. Torreyson. Mrs. Torreyson was named therein as Executrix but she declined to qualify as such and James F. Cooper was appointed Administrator With Will Annexed on July 30, 1963. Two days after his appointment, on August 1, 1963, the Administrator filed and presented a verified petition to the Probate Court in which he stated that the assets of the estate consisted largely of real estate, buildings thereon, machinery and equipment used in the greenhouse business; that the estate was solvent, and that the decedent died testate but no specific provision regarding the continuance of the business was contained in the will; that it would be to the best interest of the estate to order the Administrator to continue the business of the decedent until the further order of the court; and that all assets of the estate be liable for obligations incurred in the continuance of the business. On the same day the Probate Court entered an order in which it found the facts as recited in the Administrator's petition, and which concluded as follows:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the court that J. F. Cooper, the administrator wwa of the estate of Howard R. Torreyson, deceased, be and he is hereby authorized and directed to continue the business of the decedent as a florist and greenhouse operator; that said business be conducted solely by the administrator wwa, his agents, servants and employees; that all assets of the estate be liable for obligations incurred in the continuance of said business, and that said business be continued until the further order of this court."

Subsequently, on March 9, 1964, the Administrator filed his Inventory and Appraisement in which two parcels of real estate were described and valued at $35,000 and $5,750, respectively; and the personal property was inventoried and appraised as:

"C. C. Wonneman and Sons-Greenhouse. Business appraised as follows:

| | |
|---|---|
| Accounts Receivable as per list | 13,273.51 |
| Mdse Inventory | 1,000.00 |
| Two Delivery Station Wagons | 2,500.00 |
| All other equipment, growing plants, supplies, fixtures etc. of the business | 25,515.50 |
| | 42,289.01 |
| Less Accounts payable as per list | 8,039.01 |
| Total Personal Property | 34,250.00" |

After the Probate Court made its order of August 1, 1963, the Administrator took charge of and continued the operation of the decedent's greenhouse business, apparently largely through the efforts of one Charles Wesley Wilson as manager. It was stipulated that during the entire time Cooper as Administrator WWA operated the business it continually lost money, and that to obtain funds the Bank from time to time made loans to the Administrator, evidenced by notes which were signed, "C. C. Wonneman & Sons, Charles Wesley Wilson." In their briefs both parties regard the notes as though they had been signed by Cooper as Administrator, and we will do likewise. It was further stipulated that all of the funds so borrowed were deposited in the account of C. C. Wonneman and Sons, and were disbursed to pay obligations incurred in the conduct

and operation of said business; and that the loans were made on the day and for the amounts stated, and interest paid on each note on the date indicated are:

| Date of note | Amount | Interest paid to |
|---|---|---|
| October 28, 1963 | 1000.00 | April 28, 1965 |
| November 18, 1963 | 900.00 | May 18, 1965 |
| November 23, 1963 | 650.00 | May 23, 1964 |
| November 30, 1963 | 1500.00 | May 30, 1965 |
| December 14, 1963 | 1000.00 | June 14, 1965 |
| January 3, 1964 | 1800.00 | January 3, 1965 |
| March 24, 1964 | 4000.00 | March 24, 1965 |
| TOTAL ............. | $10,850.00 | |

By the stipulation it was agreed that no payment had been made on the principal of any of the above described notes, that the interest which remained due and unpaid on them aggregated $1156.59 as of November 8, 1966, and that the total principal and interest claimed by the Bank to be due as of that date was $12,006.49.

Cooper, the Administrator WWA, died, and Elizabeth R. Torreyson was appointed Administratrix D.B.N., W.W.A. of the decedent's estate. The exact date of Cooper's death is not stated in the transcript, but apparently it was sometime before December 23, 1965, because the record shows that on that day Mrs. Torreyson as Administratrix filed in the Probate Court a three-part pleading captioned "Objections to Amended Settlement, Objections to Motion for Allowances and Fees, and Motion for an Accounting," directed to Gertrude W. Cooper, Executrix of the Estate of James F. Cooper, deceased. The transcript also contains the order of the Probate Court made on February 2, 1966 relative to those objections and the motion in which the court ultimately found there was due the Torreyson estate the sum of $35,827.18, and that it recover from Cooper's estate and surety the sum of $5,487.39.

The transcript indicates that Mrs. Torreyson subsequently died, but again, the date of her death does not appear. She was succeeded as the decedent's personal representative by Robert J. Ahsens, who was appointed Successor Administrator, D.B.N., W.W.A. of the Torreyson estate.

His final setlement was filed on October 31, 1966, and it is to his final settlement that the Bank objected on November 10, 1966 for the reason stated. It should be mentioned that the Probate Court's order of August 1, 1963 to continue the decedent's business was never rescinded, and that after the death of Cooper both Mrs. Torreyson as Administratrix and Ahsens as Successor Administrator continued the operation of the decedent's business without either obtaining an order from the court to do so, but neither of them borrowed any money to conduct the same.

Section 473.300, RSMo 1959, V.A.M.S. provides:

"Upon a showing of advantage to the estate, the court may authorize the executor or administrator to continue any business of the decedent for the benefit of the estate; but if the decedent died testate and his estate is solvent, the order of the court is subject to the provisions of the will. The order may be with or without notice. If notice is not given to all interested persons before the order is made, the court shall promptly require the giving of notice to such interested persons as have not been previously notified to the effect that such order has been made and that they will have opportunity to show cause why it should not be set aside or modified. The order may provide:

"(1) For the conduct of the business solely by the executor or administrator,

or as a corporation to be formed by the executor or administrator, or for the participation as a partner by the executor or administrator in a business in which the decedent was a partner, subject to applicable provisions of law and the agreement of the other person or persons continuing such business as partners;

"(2) The extent of the liability of the estate, or any part thereof, or of the executor or administrator, for obligations incurred in the continuation of the business;

"(3) As to whether liabilities incurred in the conduct of the business are to be chargeable solely to the part of the estate set aside for use in the business or to the estate as a whole; and

"(4) As to the period of time for which the business may be conducted, and such other conditions, restrictions, regulations and requirements as the court orders."

As stated in the final report of the Joint Probate Laws Revision Committee of the Sixty-Seventh General Assembly, which drafted the present probate code, § 473.300 was adopted from § 131 of the Model Probate Code. Simes, Model Probate Code, p. 138. Prior to the adoption of the present code in 1955 there was no comparable statute in our prior code. And since " * * * the general purpose of the law (concerning decedents' estates) is to wind up the estate, pay off the debts, and turn over the remainder of the property to those entitled to the same in succession. * * *" State, to Use of Lancaster, Guardian v. Jones, Adm'x, 89 Mo. 470, 1 S.W. 355, 356, the authority of a probate court to authorize a personal representative to continue the operation of a decedent's business was highly doubtful. Limbaugh, Missouri Practice and Forms, Vol. I, § 650, p. 817. However, such orders were occasionally made by probate courts and upheld, usually on the basis of estoppel. Thus in In re Mills' Estate, 349 Mo. 611,

162 S.W.2d 807, the Administrator obtained an order authorizing him to continue the operation of the decedent's hauling business, of which order the sole heir had knowledge and voiced no objection. Mrs. Ostenberg, the heir, assigned 28% of her beneficial interest in the estate to Estelle Rudick, and upon the latter's attempt to question the Administrator's authority to continue the operation of the business the Supreme Court (l. c. 812) said: " * * * Appellant, Mrs. Ostenberg's assignee, is to a certain extent now estopped. * * *" A similar result was reached in Harms v. Pohlmann, 222 Mo. App. 276, 297 S.W. 138, where the Administratrix obtained an order to sell the decedent's stock of goods in a general merchandise store, for the purpose of paying debts. But on the advice of the widow, who was also guardian of her children, and of other members of the decedent's family, as well as with the knowledge and tacit approval of the probate judge, the Administrator conducted the store as a going concern and purchased some new stock in the belief that a better result could be obtained for the estate. The business proved unprofitable, and a Successor Administrator who was subsequently appointed contended that the Administrator had lacked authority to operate the business and should be surcharged for the loss which had occurred. Dwelling at length on the equitable powers of the probate court and the acquiescence of the widow and guardian, the appellate court held that the Administrator had obtained authority to continue the business and was not liable for the loss which had occurred.

Nevertheless, the general rule was that in the absence of any authority given to an executor by the decedent's will, as in Eisenstadt Jewelry Co., M. v. Mississippi Valley Trust Co., 72 Mo.App. 514, or of an order from the Probate Court to the personal representative, concurred or at least acquiesced in by those interested in the estate, an administrator who continued the operation of a decedent's business was

guilty of a breach of trust. In such a case the law charged him with all losses incurred, without allowing him the benefits of any profit he may have made. Metzger v. Metzger, Mo.App., 153 S.W.2d 118; Silsby v. Wickersham, 171 Mo.App. 128, 155 S.W. 1094; 33 C.J.S. Executors and Administrators § 193, p. 1171; 21 Am.Jur., Executors and Administrators, § 255, p. 518. And it has been indicated that under our present probate code a similar result should follow when an administrator fails to obtain an order from the probate court authorizing him to continue the operation of a business. In re Alexander's Estate, Mo., 360 S.W.2d 92. But even under our old code, where the Administratrix, while failing to obtain an order, acted prudently and in good faith, the court invoked equity to reach what it considered was a fair and just result. Merritt's Estate v. Merritt, 62 Mo. 150.

As pointed out in Bogert on Trusts and Trustees, 2nd Ed., § 571, p. 163, the personal representative of a decedent who has been engaged in business, particularly that of a sole proprietorship, is faced with a difficult problem as to its disposition. Under some circumstances it may be thought best to discontinue the business and sell it at auction; in others to sell its assets piecemeal; and in still others to continue it to conserve the property as a going concern, until it can be sold as such and the good will preserved. Undoubtedly to empower a personal representative to decide the best course to pursue the statutes of 34 states, according to Scott on Trusts, Vol. III, § 230.5, p. 1880, provide in one form or another that the court may authorize an executor or administrator to continue the operation of the decedent's business.

To place this controversy in its proper perspective it must be borne in mind that in this case Cooper did obtain an order from the Probate Court which "authorized and directed" him to continue the operation of the greenhouse business which the decedent had conducted before his death. No claim is made by the appellant Successor Administrator regarding the validity of that order. In fact, without obtaining any further order from the court both Mrs. Torreyson as Administratrix and Ahsens as Successor Administrator, in succession, continued the operation of the business after the death of Cooper. Nor is any contention made by the Successor Administrator that in continuing the operation of the business Cooper was guilty of mismanagement, waste, negligence, fraud or bad faith. Lastly, this action does not involve an attempt by the Successor Administrator to surcharge Cooper for any loss the latter may have incurred in conducting the business. Rather, the issues here are between the Successor Administrator and the respondent Bank which loaned money to Cooper as Administrator, all of which money, it is conceded was put in to the operation of the business and disbursed to pay obligations incurred in the conduct of the business. Essentially, the Successor Administrator maintains that such loans should not be recognized and treated as valid obligations of the decedent's estate on the grounds: (1) that in the Probate Court's order of August 1, 1963 Cooper was not expressly given the authority to borrow money to be used in the continued operation of the decedent's business; and (2), that by that order Cooper was not impliedly granted the right to do so. The respondent Bank tacitly concedes that the order did not explicitly authorize Cooper to borrow money to operate the business but it asserts that the right to borrow money in the conduct of a business, which business was continued under an order of court, is inherent in and included as an incident to the proper exercise of the order.

In its order of August 1, 1963, made in accordance with § 473.300, the Probate Court found that it would be to the best interest of the estate to order Cooper to continue the decedent's greenhouse business authorized and directed him to do so until further order of court, and decreed that,

" * * * all assets of the estate be liable for obligations incurred in the continuance of said business. * * *" In that order the court did not, of course, expressly state all of the things which Cooper might and might not do in compliance with the court's direction to him to continue the business. It is obvious, therefore, that of necessity Cooper was impliedly given *some* authority to effectuate the continuance of the business. Certainly there can be no doubt but that Cooper was impliedly authorized to purchase plants, bulbs, flowers and other merchandise to be used or sold; to buy necessary materials and supplies; to hire such employees as were required; to maintain and repair its greenhouses and equipment; and to defray such other costs and expenses normally incurred in conducting a greenhouse business.

Do such implied powers include the authority to borrow money to continue the operation of the decedent's business? It is true that ordinarily an executor or administrator as such has no inherent authority to borrow money on behalf of the estate, and loans to the personal representative on its behalf do not constitute valid claims against the estate. 33 C.J.S. Executors and Administrators § 202, p. 1185; 21 Am.Jur., Executors and Administrators, § 240, p. 508. And as able counsel for the Successor Administrator points out, the only statutory authority to borrow money on a mortgage on either personal property or real property are Sections 473.487 and 473.493, both of which require that an order of court be first obtained. But here Cooper did not borrow for the purpose of obtaining money to be used in the general administration of the estate, nor did he attempt to borrow and mortgage either the personal or the real property in the estate. What Cooper did was to borrow money in order to comply with the court's direction to him to continue the operation of the decedent's business. The extent of the implied authority given Cooper by that order must be judged in the light of the facts and circumstances as they then existed. It was stipulated that prior to the death of Torreyson his business was losing money and that he had made periodic loans for use in the conduct of his business. It will be noted from the inventory that at the time of the decedent's death there was no cash on hand or money on deposit either in his individual name or standing to the credit of C. C. Wonneman and Sons, the name under which he had operated his business. While the exact volume of the decedent's business is not stated, the record indicates that it was of some extent and sufficiently large so as to make it difficult, if not impossible, to continue the operation of the business without some working capital. In the light of the facts and circumstances which existed in this case we hold that the powers impliedly given to the Administrator by the court's order to continue the operation of the decedent's business included the authority to borrow money for that purpose. In that connection see Canaday v. Kauffman, Colo., 342 P.2d 1027; In re Smith's Estate, Colo., 359 P.2d 1020; Purdy v. Bank of America Nat. Tr. & Sav. Ass'n, 2 Cal.2d 298, 40 P.2d 481; Schlickman v. Citizens' Nat. Bank, 139 Ky. 268, 129 S.W. 823, 29 L.R.A.,N.S., 264.

There is an additional reason which supports the result we have reached. What the respondent Bank sought was to have the money it loaned to the Administrator recognized and included in his final settlement as a valid obligation of the estate. It was expressly stipulated that the funds so loaned were used to pay obligations incurred in the conduct and operation of the business. Under our present Probate Code, as well as under our prior one, a probate court may invoke equitable principles in matters pertaining to such probate business as the allowance of disputed claims. First Nat. Bank of Kansas City v. Mercantile Bank & Trust Co., Mo., 376 S.W.2d 164. If the Administrator had the implied power to incur debts by purchasing merchandise and supplies, when he had no funds, and obligate the estate

for the repayment thereof, it would be inequitable to hold that the Bank which loaned money to the Administrator, which money was concededly and exclusively used in payment of such debts, were not valid obligations of the estate. Evans v. Tucker, 101 Fla. 688, 135 So. 305, 85 A.L.R. 170.

■ The Successor Administrator's final point is that while an estate may be bound to repay sums borrowed by the personal representative when the money is used for the benefit of the estate, provided it is done in good faith, Evans v. Tucker, 101 Fla. 688, 135 So. 305, 85 A.L.R. 170, that principle is not applicable in the instant case. It is asserted that the loans here involved were not made in good faith because during the entire period of administration the business lost money, that Cooper was Vice-President of the respondent Bank at the time the loans were made, and that notice that Cooper was acting in a dual capacity and thereby breaching his duty of loyalty to the estate was imputable to the Bank. In support of that argument the case of Merchants' National Bank of Kansas City v. Lovitt, 114 Mo. 519, 21 S.W. 825 is cited. That case supports the position of the respondent Bank rather than that of the Successor Trustee. The rules stated in that case (l. c. 826) are that, "* * * notice of fact acquired by an agent while transacting the business of his principal, is notice to the principal," but that, "* * * the reason of the rule ceases when the agent acts for himself, and not his principal, and the rule itself ought not to apply in such a case. * * *" And the court there went on to state that "* * * An officer of a banking corporation has a perfect right to transact his own business at the bank of which he is an officer, and in such a transaction his interest is adverse to the bank, and he represents himself, and not the bank. * * *" Other than the fact that he was Vice-President there is nothing in this record which shows that Cooper acted on behalf of the Bank in connection with the loans made, or that he acted in

any capacity other than that of Administrator. And as the court there held in an analogous situation, whatever knowledge Cooper had was not imputable to the Bank.

For the reasons stated the judgment is affirmed.

WOLFE, P. J., and BRADY, J., concur.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court. Accordingly, judgment affirmed.